**No. 22-55610, No. 22-55613**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

MSP RECOVERY CLAIMS, SERIES LLC, a Delaware entity;
MSPA CLAIMS 1, LLC, a Florida entity,

*Plaintiffs-Appellants*,

v.

FARMERS INSURANCE EXCHANGE; et al.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 17-cv-02522
No. 17-cv-02559
Hon. Christina A. Snyder

---

### APPELLEES' ANSWERING BRIEF

---

Valerie Greenberg
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Email: valerie.greenberg@akerman.com

Michael R. Weiss
**AKERMAN LLP**
601 W. Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Email: michael.weiss@akerma.com

*Counsel for Defendants and Appellees*

# <u>TABLE OF CONTENTS</u>

**Page**

I.    CORPORATE DISCLOSURE STATEMENT ................................ 1

II.   STATEMENT REGARDING ORAL ARGUMENT ................................. 5

III.  INTRODUCTION .............................................................................. 6

IV.  JURISDICTIONAL STATEMENT .................................................. 12

V.   STATEMENT OF ISSUES ............................................................... 12

VI.  STATUTORY AUTHORITIES ......................................................... 13

VII. STATEMENT OF THE CASE .......................................................... 13

    A.    Factual and procedural history. ........................................13

          1.    The parties. ............................................................14

          2.    The complaints and numerous amendments. ...........15

          3.    Farmers' summary judgment motions. ....................19

          4.    The District Court's summary judgment rulings on
              appeal. ...................................................................21

              a.    Failure of proof. .........................................21

              b.    Statute of limitations. ..................................23

              c.    Failure to prove Article III standing. ...........24

    B.    Statutory background: The law of Medicare and its MSP Act. ..........24

          1.    The MSP Act, conditional payments, and the private
              right of action. .....................................................24

          2.    Medicare Advantage Organizations (MAOs). .........25

          3.    "First Tier" and "Downstream" entities. ................27

VIII. SUMMARY OF THE ARGUMENT ........................................ 28

IX.   ARGUMENT .................................................................................. 29

    A.    Standard of Review. ........................................................29

    B.    The District Court correctly ruled MSP Recovery's evidence
        was inadmissible and insufficient. .......................................30

          1.    MSP Recovery relied on inadmissible self-created
              spreadsheets. ..........................................................33

i

a.   The District Court correctly applied Rule 803(6). .........36

b.   MSP Recovery's unsubstantiated speculation that it may be able to replace its spreadsheets with admissible evidence at trial is precluded and futile........38

c.   The declarations do not change the analysis. .................41

d.   MSP Recovery's cited authority is of no avail..............45

2.   The District Court properly ruled that MSP Recovery's "proof," apart from inadmissibility, does not raise a triable issue of material fact with respect to critical components of MSP Recovery's claims. ..................................47

a.   MSP Recovery failed to prove the alleged payments were for treatments relating to automobile accidents. ....................................48

b.   MSP Recovery failed to prove payments were "conditional."................................................50

c.   MSP Recovery offered no proof Farmers initially failed to pay any bills.....................................52

C.   The District Court correctly found 129 of MSP Recovery's claims were time-barred. .......................................................53

D.   The District Court's procedures were proper.....................................58

1.   Summary judgment was procedurally appropriate. ..................59

2.   The statute of limitations ruling was permitted and helpful. ..................................................62

E.   This Court can affirm the judgments on the additional grounds set forth in Farmers' summary judgment motions. ............................64

X.   CONCLUSION.................................................................. 65

XI.   STATUTORY ADDENDUM .................................................... 67

XII.   CERTIFICATE OF COMPLIANCE ........................................ 66

68522435;1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ASARCO, LLC v. Union Pac. R. Co.*,
    765 F.3d 999 (9th Cir. 2014) ...............................................................57

*Augustine v. United States*,
    704 F.2d 1074 (9th Cir. 1983) .............................................................60

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) ...............................................................44

*Bemis v. Edwards*,
    45 F.3d 1369 (9th Cir. 1995) ...............................................................29

*Block v. City of Los Angeles*,
    253 F.3d 410 (9th Cir. 2001) ...............................................................39

*Boyd v. City & Cnty. of San Francisco*,
    576 F.3d 938 (9th Cir. 2009) ...............................................................29

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*,
    159 F.3d 412 (9th Cir. 1998) ...............................................................64

*Davita Inc. v. Virginia Mason Mem'l Hosp.*,
    981 F.3d 679 (9th Cir. 2020) ......................................................53, 56

*Domingo ex rel. Domingo v. T.K.*,
    289 F.3d 600 (9th Cir. 2002) ...............................................................29

*Ellis v. Walker Dev. Co.*,
    884 F.2d 467 (9th Cir. 1989) ...............................................................60

*Glover v. Liggett Grp., Inc.*,
    459 F.3d 1304 (11th Cir. 2006) ....................................................52, 53

*Harman v. Apfel*,
    211 F.3d 1172 (9th Cir. 2000) .............................................................29

68522435;1

*HSBC Ins. Ltd. v. Scanwell Container Line Ltd.*,
   2001 WL 1875851 (C.D. Cal. July 25, 2001) ..................................................44

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,
   832 F.3d 1229 (11th Cir. 2016) ...................................................27, 50

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   685 F.3d 353 (3d Cir. 2012) ...............................................................27

*In re Duncan*,
   713 F.2d 538 (9th Cir. 1983) ...............................................................59

*Jones v. Royal Admin. Servs., Inc.*,
   887 F.3d 443 (9th Cir. 2018) ...............................................................29

*Krupski v. Costa Crociere S.p.A.*,
   560 U.S. 538 (2010) ...........................................................................55

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ...............................................................29

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...........................................................................59

*MAO-MSO Recovery II, LLC v. Mercury Gen.*,
   2021 WL 3615905 (C.D. Cal. Aug. 12, 2021) ...........................................22, 28

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   2018 WL 3420796 (C.D. Ill. July 13, 2018) ...............................................25

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   2019 WL 6311987 (C.D. Ill. Nov. 25, 2019), *aff'd*, 994 F.3d 869 (7th Cir.
   2021) ...........................................................................11, 49, 50

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   935 F.3d 573 (7th Cir. 2019) ...............................................................12

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
   994 F.3d 869 (7th Cir. 2021) ...................................................7, 10, 11, 48, 58

*Moreno v. Los Angeles Cnty. Sheriff's Dep't*,
   2015 WL 4652637 (C.D. Cal. Aug. 3, 2015) ...............................................43

iv

*Morgan v. Buttigieg*,
2022 WL 1566976 (9th Cir. May 18, 2022)......................................................29

*Mpoyo v. Litton Electro-Optical Sys.*,
430 F.3d 985 (9th Cir. 2005) .............................................................................59

*MRT Const. Inc. v. Hardrives, Inc.*,
158 F.3d 478 (9th Cir. 1998) .............................................................................45

*MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*,
974 F.3d 1305 (11th Cir. 2020) .........................................................................27

*MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*,
2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021).............................................10, 31

*MSP Recovery Claims, Series LLC v. AIX Specialty Ins. Co.*,
2020 WL 5524854 (M.D. Fla. Aug. 10, 2020)...........................................49, 61

*MSP Recovery Claims, Series LLC v. Am. Nat'l Prop. & Cas. Co.*,
550 F.Supp.3d 1311 (S.D. Fla. 2021) ................................................................35

*MSP Recovery Claims, Series LLC v. Hartford Fin. Servs.*,
2021 WL 5563982 (D. Conn. Nov. 29, 2021) ....................................................58

*MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*,
2022 WL 118387 (S.D.N.Y. Jan. 11, 2022) ......................................................49

*MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*,
2019 WL 4222654 (N.D.N.Y. Sept. 5, 2019).............................................11, 58

*MSP Recovery Claims, Series LLC. v. NGM Ins. Co.*,
2021 WL 1172810 (M.D. Fla. Mar. 29, 2021) ...................................................10

*MSP Recovery Claims, Series LLC v. Tower Hill Prime Ins. Co.*,
2022 WL 17839537 (N.D. Fla. Dec. 20, 2022)..................................................44

*MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*,
2018 WL 5112998 (S.D. Fla. Oct. 19, 2018) .....................................................22

*MSP Recovery, LLC v. Allstate*,
2015 WL 10857402 (S.D. Fla. June 24, 2015)...................................................48

68522435;1

*MSP Recovery, LLC v. Allstate Ins. Co.*,
  835 F.3d 1351 (11th Cir. 2016) ..........................................................48

*MSPA Claims 1, LLC v. Infinity Auto Ins. Co.*,
  2017 WL 4286852 (S.D. Fla. Sept. 27, 2017) ....................................22

*Nationstar Mortg. LLC v. Saticoy Bay LLC, Series 9229 Millikan Ave.*,
  996 F.3d 950 (9th Cir. 2021) ...............................................................46

*Netro v. Greater Baltimore Med. Ctr., Inc.*,
  891 F.3d 522 (4th Cir. 2018) ...............................................................52

*Ocean Harbor Cas. Ins. v. MSPA Claims 1, LLC*,
  261 So. 3d 637 (Fla. 3d DCA 2018) ....................................................48

*Paddack v. Dave Christensen, Inc.*,
  745 F.2d 1254 (9th Cir. 1984) .............................................................37

*Parra v. PacifiCare of Ariz., Inc.*,
  715 F.3d 1146 (9th Cir. 2013) .............................................................25

*Pickern v. Holiday Quality Foods Inc.*,
  293 F.3d 1133 (9th Cir. 2002) .............................................................63

*Pouncil v. Tilton*,
  704 F.3d 568 (9th Cir. 2012) ...............................................................29

*Przedwojewski v. NHS Mgmt., LLC*,
  2012 WL 12895655 (N.D. Ala. Feb. 17, 2012), *aff'd*, 503 F.App'x 891
  (11th Cir. 2013) ....................................................................................27

*Scott v. Pasadena Unified School District*,
  306 F.3d 646 (9th Cir. 2002) ...............................................................62

*Smith v. Kilgore*,
  926 F.3d 479 (8th Cir. 2019) ...............................................................39

*Speiser, Krause & Madole P.C. v. Ortiz*,
  271 F.3d 884 (9th Cir. 2001) ...............................................................30

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*,
  770 F.3d 1282 (9th Cir. 2014) .............................................................62

vi

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
  576 F.3d 1040 (9th Cir. 2009) ....................................................................45, 46

*United States v. $9,041,598.68*,
  163 F.3d 238 (5th Cir. 1998) ................................................................61

*United States v. Baxter Int'l, Inc.*,
  345 F.3d 866 (11th Cir. 2003) .............................................................10

*United States v. Childs*,
  5 F.3d 1328 (9th Cir. 1993) ..................................................................42

*United States v. Hinkson*,
  585 F.3d 1247 (9th Cir. 2009) .............................................................30

*United States v. Hooper*,
  229 F.3d 818 (9th Cir. 2000) ...............................................................61

*Williams v. Taylor*,
  529 U.S. 420 (2000)..............................................................................52

**Statutes**

Medicare Act...................................................................................................26

MEDICARE, MEDICAID, AND SCHIP EXTENSION ACT OF 2007...............26

Medicare Secondary Payer Act...................................................................6, 11, 24

Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3)(A)....................15, 27, 52

Medicare Secondary Payer Act, 42 U.S.C. § 1395y *et seq.* .......................12, 14, 25

**Rules**

Fed. R. Civ. P. 15(c)........................................................................................55

Fed. R. Civ. P. 15(c)(1)(B)-(C)........................................................................55

Fed. R. Civ. P. 56(c)........................................................................................59

Fed. R. Civ. P. 56(c)(1)(4) ...............................................................................44

Fed. R. Evid. 803(6).......................................................9, 29-32, 36, 37, 39, 42-45

Fed. R. App. P. 26.1 ................................................................1

Fed. R. Civ. P. 56 .............................................................38, 40

Fed. R. Civ. P. 56(c)(2) ..........................................................39

Fed. R. Civ. P. 56(c)(4) ..........................................................40

Fed. R. Civ. P. 1006 ..........................................................37, 38

**Other Authorities**

42 C.F.R. § 411.21 ...........................................................25, 51

42 C.F.R. § 411.24(e) ............................................................15

42 C.F.R. § 411.25 ................................................................27

42 C.F.R. § 411.51(b) ............................................................25

42 C.F.R. § 422.108 ..............................................................51

42 C.F.R. § 422.108(b) ......................................................26, 50

42 C.F.R. § 422.108(b)(3) .......................................................51

68522435;1

# I.

# CORPORATE DISCLOSURE STATEMENT

Appellees, pursuant to Federal Rules of Appellate Procedure, Rule 26.1, hereby identify all parent corporations and all publicly held corporations that own 10% or more of each Appellee's stock. On November 14, 2022, this Court granted the parties' joint motion to consolidate Appeal No. 22-55610 (cv-02522 No-Fault Case) and Appeal No. 22-55613 (cv-02559 Settlement Case).

In the cv-02522 No-Fault case, Appeal No. 22-55610, Appellees state the following:

1.     Appellee *Farmers Insurance Exchange* is owned by its policyholders.  There is no parent corporation or publicly held corporation to report for this entity. Farmers Group, Inc., dba Farmers Underwriters Association, directly or indirectly through its subsidiaries, provides certain non-claims related services to Farmers Insurance Exchange but has no ownership interest in it. Farmers Group, Inc. is a wholly owned subsidiary of Zurich Insurance Group, Ltd, which is publicly traded on the Swiss Stock Exchange.

2.     Appellee *Illinois Farmers Insurance Company* is wholly owned by Farmers Insurance Exchange (100%).

3.     Appellee *Farmers Insurance of Columbus, Inc.* is wholly owned by Farmers Insurance Exchange (100%).

1

4.     Appellee *21st Century Centennial Insurance Company* is wholly owned by Mid-Century Insurance Company (100%) (identified next).

5.     Appellee *Mid-Century Insurance Company* is owned by Farmers Insurance Exchange (80%), Fire Insurance Exchange (10%), and Truck Insurance Exchange (10%). The Exchanges are owned by their policyholders. There is no parent corporation or publicly held corporation to report for these entities. Farmers Group, Inc., dba Farmers Underwriters Association (identified above), directly or indirectly through its subsidiaries, provides certain non-claims related services to the Exchanges but has no ownership interest in them.

6.     Appellee *Foremost Property and Casualty Insurance Company* is wholly owned (100%) by Foremost Insurance Company Grand Rapids, Michigan (identified below).

7.     Appellee *21st Century North America Insurance Company* is wholly owned (100%) by Mid-Century Insurance Company (identified above).

8.     Appellee *21st Century Indemnity Insurance Company* has been renamed as Greenwood Insurance Company.  Greenwood Insurance Company is wholly owned by Everspan Insurance Company, which in turn is wholly owned by Everspan Indemnity Insurance Company, which in turn is wholly owned Everspan Holdings, LLC, which in turn is wholly owned by Ambac Financial Group, Inc.  Ambac Financial Group, Inc. is publicly traded on the New York Exchange.

2

68522435;1

9.     Appellee *21st Century Preferred Insurance Company* has been renamed Trisura Insurance Company and is wholly owned by Trisura (US) Holding Company.  Trisura (US) Holding Company is wholly owned by Trisura Group Ltd., which is publicly traded on the Toronto Stock Exchange.

10.     Appellee **Fire Insurance Exchange** is owned by its policyholders. There is no parent corporation or publicly held corporation to report for this entity. Farmers Group, Inc., dba Farmers Underwriters Association, directly or indirectly through its subsidiaries, provides certain non-claims related services to Fire Insurance Exchange but has no ownership interest in it.

11.     Appellee **Foremost Insurance Company Grand Rapids, Michigan** is wholly owned by Farmers Insurance Exchange (80%) (identified above), Fire Insurance Exchange (10%) (identified above), and Truck Insurance Exchange (10%) (identified above).

12.     Appellee **Farmers New Century Insurance Company** is wholly owned by Illinois Farmers Insurance Company (100%), which in turn is wholly owned by Farmers Insurance Exchange (100%).

In the cv-02559 Settlement case, Appeal No. 22-55613, Appellees state the following:

1.     Appellee **Farmers Insurance Exchange** is owned by its policyholders.  There is no parent corporation or publicly held corporation to report

3

for this entity. Farmers Group, Inc., dba Farmers Underwriters Association, directly or indirectly through its subsidiaries, provides certain non-claims related services to Farmers Insurance Exchange but has no ownership interest in it. Farmers Group, Inc. is a wholly owned subsidiary of Zurich Insurance Group, Ltd, which is publicly traded on the Swiss Stock Exchange.

2.      Appellee *Farmers Insurance of Columbus, Inc.* is wholly owned by Farmers Insurance Exchange (100%).

3.      Appellee *Mid-Century Insurance Company* is owned by Farmers Insurance Exchange (80%), Fire Insurance Exchange (10%), and Truck Insurance Exchange (10%). The Exchanges are owned by their policyholders. There is no parent corporation or publicly held corporation to report for these entities. Farmers Group, Inc., dba Farmers Underwriters Association (identified above), directly or indirectly through its subsidiaries, provides certain non-claims related services to the Exchanges but has no ownership interest in them.

4.      Appellee *Fire Insurance Exchange* is owned by its policyholders. There is no parent corporation or publicly held corporation to report for this entity. Farmers Group, Inc., dba Farmers Underwriters Association, directly or indirectly through its subsidiaries, provides certain non-claims related services to Fire Insurance Exchange but has no ownership interest in it.

4

5.     Appellee *21st Century Centennial Insurance Company* is wholly owned by Mid-Century Insurance Company (100%) (identified above).

6.     Appellee *21st Century North America Insurance Company* is wholly owned (100%) by Mid-Century Insurance Company (identified above).

7.     Appellee *21st Century Preferred Insurance Company* has been renamed Trisura Insurance Company and is wholly owned by Trisura (US) Holding Company. Trisura (US) Holding Company is wholly owned by Trisura Group Ltd., which is publicly traded on the Toronto Stock Exchange.

8.     Appellee *Foremost Property and Casualty Insurance Company* is wholly owned (100%) by Foremost Insurance Company Grand Rapids, Michigan (identified next).

9.     Appellee *Foremost Insurance Company Grand Rapids, Michigan* is wholly owned by Farmers Insurance Exchange (80%) (identified above), Fire Insurance Exchange (10%) (identified above), and Truck Insurance Exchange (10%) (identified above).

## II.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees agree oral argument is warranted to further address issues raised on these appeals and/or to address any questions the Court may have. However, Appellees disagree with Appellants' assertions that oral argument is warranted

because the appeals raise "important issues of first impression" and address "important evidentiary issues likely to be seen with increasing frequency in complex civil litigation."

## III.

## INTRODUCTION

After a meticulous review of all of the arguments and evidence presented by MSP Recovery at summary judgment, the District Court: (i) correctly concluded MSP Recovery failed to submit evidence sufficient to raise a triable issue of material fact on each of its claims, given that it relied primarily on its own made-for-litigation spreadsheets that were inadmissible and otherwise did not even address elements of the claims; (ii) correctly concluded the claims in the Fourth Amended Complaints did not relate back to the initial complaints and thus 129 of the 151 claims were time barred; and (iii) correctly entered summary judgments, as opposed to dismissals without prejudice.

Over the course of five years of litigation, Plaintiffs and Appellants MSP Recovery Claims, Series LLC and MSPA Claims 1, LLC (collectively, "MSP Recovery") were given everything they asked for from Defendants and Appellees (collectively, "Farmers") in each of these two cases, except judgment in their favor. The actions sought double damages under the Medicare Secondary Payer Act for purported "conditional payments" that MSP Recovery claimed its assignors

made for automobile-accident-related injuries that supposedly should have been made or reimbursed by Farmers. MSP Recovery was allowed five iterations of pleadings, cavalierly dropping and adding claims and parties such that the final complaints did not contain a single claim from the initial filings. MSP Recovery was indulged with an intensive and time-consuming massive discovery process it called "data matching" in which Farmers provided information on more than 113,000 automobile insurance claims so that MSP Recovery could fish for hoped-for claims to eventually swap into the cases in repeated amendments. MSP Recovery even got discovery from Farmers entities that were not named in the cases.

Still, at the "put up or shut up moment of summary judgment,"[1] when required to proffer evidence to support the 206 claims it chose to allege in its Fourth Amended Complaints against 21 Farmers entities, MSP Recovery instead abandoned 55 of the claims, and for the remaining 151 failed to establish them as a matter of law. Thus, the District Court correctly granted summary judgment for Farmers on all claims in both cases, finding that all of MSP Recovery's claims failed "because plaintiffs have not put forth any evidence, let alone admissible

---

[1] *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.* ("*State Farm 2021*"), 994 F.3d 869, 878 (7th Cir. 2021) ("[A]t the critical put up or shut up moment of summary judgment, the plaintiffs once again failed to establish standing.").

7

evidence" supporting the claims and the majority of the claims were time-barred.

MSP Recovery's "evidence" of purported facts and damages of its 151 claims consisted primarily of its own homemade spreadsheets of numbers and codes, which the District Court found were a mixture of "Raw Assignor data, Third-Party data, and defendant discovery," with MSP Recovery's own additions and alterations, that MSP Recovery created during this litigation for purposes of this litigation. The District Court concluded these spreadsheets, attached to 11 of 13 declarations that MSP Recovery submitted with its summary judgment opposition, were inadmissible hearsay and not business records of the assignors nor adoptive business records of MSP Recovery.

Further, irrespective of inadmissibility, the District Court concluded the spreadsheets did not include any material on certain required elements of the 151 claims. The District Court considered MSP Recovery's declarations and concluded they failed to transform the spreadsheets into admissible evidence and failed to fill the proof gaps on the elements of the claims. Additionally, the District Court concluded 129 of the 151 claims were time-barred since they did not relate back to the initial complaints (which alleged no claims) because each of MSP Recovery's claims was distinct, and these 129 claims were not alleged until after the statute of limitations had expired.

The District Court methodically and thoroughly set out its findings in

detailed Civil Minutes Orders (24 pages in the No-Fault Case, 23 in the Settlement Case), which in comprehensive fashion: recounted each of the parties' many arguments, set out the summary judgment standard, explained why MSP Recovery's "proof" including the spreadsheets and declarations (several addressed individually) was inadequate and did not fall within any exceptions to the Federal Rule of Evidence 803(6) prohibition on hearsay, explained why most of the claims were time-barred, and even addressed and rejected the handful of specific claims MSP Recovery highlighted as its best ones.

Incredibly, MSP Recovery asserts on appeal the District Court "misunderstood," *inter alia*, "its role," the standards on summary judgment, the "nature of modern corporate records," the use of "electronic data" in court proceedings, and the concept of whether claims in an amended pleading "relate back" to the initial complaint. MSP Recovery also challenges the District Court's procedure, the scope of its rulings, and the form of its final disposition, asking this Court to convert the outcome of these intensely-litigated cases from judgments to dismissals without prejudice and to erase the District Court's statute of limitations ruling. MSP Recovery's Opening Brief, like its underlying pleadings, relies heavily on unsubstantiated assertions about the insurance industry and Medicare, rather

than on actual proved facts about Farmers.[2]

This Court should reject MSP Recovery's assertions. MSP Recovery had ample chances to allege and prove its claims and should not be rewarded with unfettered freedom to try to relitigate them (as a dismissal without prejudice would provide). It engaged in scorched earth discovery in order to rummage through Farmers' data and claim files to find and inject new claims, abandon earlier-pled claims, drop and add parties repeatedly—only to reach summary judgment with insufficient evidence and time-barred claims, among many other defects. Indeed, its litigation model has been rebuked by courts across the country:

> Plaintiffs' strategy, it appears, is to throw their allegations into as many federal courts as possible and see what sticks. In each of these cases, Plaintiffs file deficient complaints, rely on courts to point out the problems, and then repeatedly amend their pleadings.... Plaintiffs' tactics are a flagrant abuse of the legal system.

---

[2] For example, MSP Recovery refers to Farmers' "uniform and systematic course of conduct" (Appellants' Opening Brief ("AOB") 23) even though MSP Recovery did not prove a single instance of wrongdoing. *See MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.* ("*AIG*"), 2021 WL 1164091, at *1 (S.D.N.Y. Mar. 26, 2021) (dismissing "complaint long on invective and indignation but short on facts"). Similarly, MSP Recovery asserts that it and its assignors have a "difficult" time "implement[ing] the MSP Act" (AOB 5), relying on *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 901 (11th Cir. 2003), a case that pre-dates the government's establishment of mandatory reporting to Medicare by insurers, and apparently referencing MSP Recovery's own flawed litigation model. *See, e.g., State Farm 2021* at 878 ("these debt collector plaintiffs pull the litigation trigger before doing their homework"); *MSP Recovery Claims, Series LLC. v. NGM Ins. Co.*, 2021 WL 1172810 at *2 (M.D. Fla. Mar. 29, 2021) ("The Court declines to conduct research or make arguments on Plaintiffs' behalf.").

*MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.* ("*N.Y. Cent.*"), 2019 WL 4222654, at \*6 (N.D.N.Y. Sept. 5, 2019) (internal citations omitted). As the Seventh Circuit Court of Appeals, affirming a summary judgment in favor of the defendant insurer, held in a similar case:

> They sue to collect on receivables they paid little or nothing for and then rely on the discovery process to show they acquired something of value and thus have an enforceable right to collect. This time around, at the critical put up or shut up moment of summary judgment, the plaintiffs once again failed to establish standing.... [T]hese plaintiffs' sue first and ask questions later approach risks stretching the limits of judicial patience, and counsel for the plaintiffs would be well advised to confirm the existence of an actual injury before once again availing themselves of the judicial process.

*State Farm 2021*, 994 F.3d at 871, 878-79 ("This lawsuit mirrors scores like it filed in federal courts throughout the county that have all the earmarks of abusive litigation and indeed have drawn intense criticism from many a federal judge."); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.* ("*State Farm MSJ Order*"), 2019 WL 6311987, at \*6-7, \*10 (C.D. Ill. Nov. 25, 2019), *aff'd*, 994 F.3d 869 (7th Cir. 2021) (granting summary judgment against plaintiffs for failing to prove assignor's alleged payment was for medical treatment relating to an automobile accident and "conditional" under the Medicare Secondary Payer Act, and denying leave to add new claims, stating: "Federal court is not a sounding board for litigants to test various theories until they find one allowing the litigation to continue.").

"[E]nough is enough." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.* ("*State Farm 2019*"), 935 F.3d 573, 582 (7th Cir. 2019). The District Court was correct. All of the alleged claims failed "because plaintiffs have not put forth any evidence, let alone admissible evidence" supporting the claims, and the majority of the claims were time-barred. The District Court's summary judgments should be affirmed.

## IV.

## JURISDICTIONAL STATEMENT

These cases involve claims arising under federal law, namely the Medicare Secondary Payer Act, 42 U.S.C. §1395y *et seq*. As such, the District Court had subject matter jurisdiction.

## V.

## STATEMENT OF ISSUES

1.      Did the District Court correctly determine MSP Recovery failed to submit evidence sufficient to raise a triable issue of material fact on each of its 151 claims?

2.      Did the District Court correctly determine the claims in the Fourth Amended Complaints did not relate back to the initial complaints and thus 129 of the 151 claims were time barred?

3.      Did the District Court, after a thorough review of the evidence and

12

after finding that MSP Recovery failed to submit sufficient evidence, correctly enter summary judgments, as opposed to dismissals without prejudice?

## VI.

## STATUTORY AUTHORITIES

Except for the regulations contained in the Addendum to this brief, all relevant statutes and regulations are contained in the Addendum to Appellants' Opening Brief.

## VII.

## STATEMENT OF THE CASE

### A.  Factual and procedural history.

These two lawsuits have a tortured history. MSP Recovery used discovery to try to reverse-engineer these cases and flip-flopped on hundreds of claims over the years, forcing Farmers to analyze claims and develop defenses, only to have MSP Recovery drop and add claims and parties—and then do it all over again. The District Court once remarked these are lawsuits "in search of claims." *See* Appellants' Excerpts of Record ("ER") 3-ER-514:22-23. Even with its litigation acrobatics, in the end MSP Recovery did not have and could not prove any claims against Farmers.

13

1. **The parties.**

MSP Recovery, with affiliated entities, operates as a collection agency that since 2014 has been buying rights to file lawsuits.[3] 1-ER-9, 33; fn.3 *infra*; 2-ER-188-233(Facts 22-92); 3-ER-263-290(Facts 22-90); 3-ER-448, 461-477; 4-ER-893, 903-904, 909-919. MSP Recovery is not affiliated with direct government Medicare; it is not a Medicare plan or medical provider; nor does it have assignments of benefits from or agreements with the people whose medical treatment and insurance claims are the fodder for its lawsuits. *Id*. Rather, it sued pursuant to vague assignment and purchase agreements from Medicare Advantage Organizations ("MAOs") and MAO-subcontractors. *Id*., 3-ER-461-478; 4-ER-723-725, 903-919. The assignment agreements did not contain lists of claims or alleged receivables; instead they merely conveyed a right to try to determine if amounts may be owed and then try to collect. 10-ER-2145-2189, 27-ER-6959-7419. Many also excluded large categories of claims. *Id*.

Farmers, for these appeals, consists of 21 insurance companies or exchanges named as defendants in MSP Recovery's Fourth Amended Complaints and are

---

[3] Despite filing hundreds of cases, the MSP Recovery affiliates admitted in filings with the Securities and Exchange Commission they have "a history of net losses and no substantial revenue to date." *See* July 21, 2022 MSP Recovery Registration Statement, Form S-1, p.9 (*available at* https://investors.msprecovery.com/static-files/2ed1912a-4b11-4c8d-9502-7f7f42e8a200).

identified in Farmers' Corporate Disclosure Statement. 3-ER-462-463, 4-ER-904-905.

### 2. The complaints and numerous amendments.

MSP Recovery sued in two cases: Case cv-02522 involves claims for no-fault insurance benefits (the "No-Fault Case") and Case cv-02559 involves claims for liability coverage where Farmers allegedly entered into injury insurance settlements (the "Settlement Case"). 3-ER-448-509, 4-ER-893-943 (Fourth Amended Complaints). The cases included: (i) in both, a count for a private cause of action under the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. §1395y(b)(3)(A), seeking double damages for alleged "conditional" payments the assignors purportedly made for which they were not reimbursed; and (ii) in the No-Fault Case, a second count under 42 C.F.R. §411.24(e) for breach of contract pursuant to purported subrogation rights seeking reimbursement of these same purported payments. *Id*.

In general, MSP Recovery alleged that payments were made by its assignors for automobile-accident-related injuries that should have been paid by various Farmers entities, allegedly "primary payers" under the MSP Act because they extended No-Fault coverage to the underlying insureds (for claims in the No-Fault Case) or paid bodily injury coverage in settlements to persons in accidents with insureds (for claims in the Settlement Case). *Id*. MSP Recovery asserted these

15

payments qualified as "conditional payments" made by "secondary payers" under the MSP Act, and Farmers was liable for double damages under the Act's private cause of action because it purportedly "failed" to make these payments or reimbursements. *Id.*

The initial complaints were filed on March 31 and April 3, 2017 by Plaintiff MSPA Claims 1, LLC and two of its affiliates against three Farmers entities. 1-ER-8&32, 8-ER-1966-2016. Those complaints and the first and second amended versions (dismissed for lack of facts and lack of standing) had: three plaintiffs of which two are no longer in these cases; 47 defendants of which 26 were later dropped or dismissed; and no claims traceable from a specific assignor to a specific plaintiff to a defendant. 8-ER-1966, 8-ER-1910, 7-ER-1754; 8-ER-1994, 8-ER-1941, 8-ER-1829. For the Third Amended Complaints, after receiving court-ordered disclosures about 514 insurance claimants from the three then-named defendants and a multitude of Farmers entities not even named in the cases at that time, two plaintiffs were dropped and Plaintiff MSP Recovery Claims, Series LLC was added, 14 defendants were dropped, and 14 new defendants were added, with 28 claims alleged. 3-ER-604-699. Appellees' Supplemental Excerpts of Record ("SER") SER-284-288.

After the District Court granted in part Farmers' motions to dismiss the Third Amended Complaints, dismissing five defendants for lack of personal

16

jurisdiction (10-ER-2237-2262), Farmers provided insurance claim files for the 28 "exemplar" claims, conducted discovery, and developed defenses to those 28 claims, even filing a motion for summary judgment when MSP Recovery abandoned two of those claims early on. SER-197, 247-248.

But rather than litigate the cases to conclusion on those 28 claims, MSP Recovery protested it still needed to engage in what it called "data matching" in order to try to find all persons enrolled with MSP Recovery's assignors who had insurance claims with Farmers and thereby try to find any and all of its own possible additional claims. 6-ER-1490-1504. The District Court ordered Farmers to engage in the data matching, including by the two defendants against which MSP Recovery had no claims, deferred ruling on a pending summary judgment motion, and imposed a final amendment deadline on MSP Recovery. 6-ER-1487-1488, 1506-1510.

As part of this data matching, Farmers provided identifying information, dates of loss, payment and policy coverage information for 113,032 claims involving Medicare beneficiaries, including persons not enrolled with MSP Recovery's assignors or any MAOs, and for anyone over 65 irrespective of Medicare enrollment. SER-200:7-9. Thereafter, in response to a request from MSP Recovery as it tried to hone in on potential new claims to allege, Farmers provided dates of loss, payment information and exhaustion information for 402 of those

17

claims. 6-ER-1488.

Later, MSP Recovery admitted the 28 claims in the Third Amended Complaints were pled with no regard to whether those named defendants allegedly owed any payment, but were placeholders merely to appease the District Court's requirement that there be claims "tracing" to each of the named assignors and each of the defendants. 17-ER-4209:2-4212:20, 4182:22-4197:19, 4280(287:21)-4281(291:23). Thus, MSP Recovery admittedly had manufactured a launching pad for the data matching and related discovery so it could try to find all of its hoped-for claims.

Finally, on December 29, 2020, the MSP Recovery entities that are now the Plaintiffs and Appellants in these cases filed the operative Fourth Amended Complaints, in which they essentially started over. 3-ER-448-507, 4-ER-893-943. The Fourth Amended Complaints dropped another eight defendants, dropped 23 of the 28 claims, and alleged 201 new claims, for a total of 206 claims–118 in the No-Fault Case and 88 in the Settlement Case—and a putative nationwide class of unnamed MAOs, MAO-subcontractors, and their assignees against 21 Farmers defendants. *Id.*; SER-183-189. None of the claims in the Fourth Amended Complaints were in the initial complaints.

According to MSP Recovery, it selected the 206 claims and the specific line-item purported payments for which it sued as follows. Its assignors purportedly

provided their enrollees' health-care data (which included treatment and medical payments unrelated to automobile accidents) to a non-party affiliate called MSP Recovery, LLC, which then used a proprietary "system" it developed to: mix that health-care data with material bought from vendors and other third parties and with information it obtained from Farmers in discovery;[4] add its own material to increase potential damages; pick the alleged claims to include in litigation; pick the alleged line-item data to include and other material to exclude; and, ultimately create the spreadsheets MSP Recovery then used as "evidence." *Id.,* 2-ER-166-170&240-243(Facts 3,4).

### 3. Farmers' summary judgment motions.

On November 22, 2021, Farmers moved for summary judgment on the Fourth Amended Complaints, raising a multitude of arguments including the inadmissibility and insufficiency of MSP Recovery's evidence and the statute of limitations bar to most of the claims. SER-109, 147. In its opposition responses, MSP Recovery filed 13 declarations, 10 of which attached spreadsheets that MSP Recovery argued were sufficient to stave off summary judgment. In a footnote

---

[4] In addition to the materials obtained in the data exchange and related discovery, after alleging the 206 claims MSP Recovery asked for and received thousands of pages of claim file materials, coverage and payment information and took depositions of five defense witnesses. 6-ER-1490-1532, 10-ER-2161-2162(¶¶13, 15, 20).

19

tucked in its summary judgment opposition memorandum, MSP Recovery also cavalierly abandoned 55 of the 206 claims with no explanation (22 in the No-Fault Case and 33 in the Settlement Case),[5] leaving 151 claims for adjudication.[6]

On May 9, 2022, the District Court issued a tentative decision and held a hearing on the summary judgment motions at which MSP Recovery argued, *inter alia*, why it believed its spreadsheets should be admissible. 1-ER-12.[7] After the hearing, MSP Recovery filed with the District Court a 51-page "demonstrative" it used at the hearing to try to bolster its arguments and also moved for leave to file a supplemental brief to try to argue again why its spreadsheets should be admissible and sufficient, which the District Court allowed over Farmers' opposition. 2-ER-85-138, 1-ER-12. Thereafter, on May 16 and 20, 2022, MSP Recovery filed

---

[5] By dropping the 55 claims, MSP Recovery has no claims against two defendants in the No-Fault Case: Farmers Insurance Exchange and Foremost Property & Casualty Insurance Company. Further, MSP Recovery stated in its summary judgment opposition it was dropping all claims from one of its assignors, leaving no claims in the No-Fault Case against Fire Insurance Exchange.

[6] The District Court's MSJ Order referenced 55 dropped claims, leaving 96 in the No-Fault case and 55 in the Settlement Case. 1-ER-24, 47, 24-ER-6278-6284(¶43). However, MSP Recovery's Declaration of Christopher Miranda indicated 57 claims were dropped, leaving 95 and 54 respectively. 24-ER-6278-6284. For purposes of these appeals, Farmers uses the District Court's numbers.

[7] At the hearing, the District Court advised that although MSP Recovery included untimely-produced materials in its opposition, the Court considered them. 1-ER-12(n.2), 2-ER-139-143. Additionally, none of the witnesses for the 10 assignor declarations submitted by MSP Recovery had been disclosed prior to the summary judgment opposition. SER-021:9-11.

supplemental briefs and Farmers filed responses. 2-ER-77-84.

On May 25, 2022, the District Court granted Farmers' summary judgment motions and denied MSP Recovery's motions for class certification as moot.[8] 1-ER-8-54. Civil Minutes Orders were entered on May 25, 2022, followed in each case by Judgment Granting Summary Judgment on May 26, 2022. *Id*., 1-ER-2-7.

### 4. The District Court's summary judgment rulings on appeal.

The District Court granted the summary judgment motions based on three grounds: failure of proof, statute of limitations, and lack of standing. 1-ER-25-31.

### a. Failure of proof.

For its claims, MSP Recovery relied on its self-created spreadsheets of codes and numbers as "proof" of, *inter alia*: the identity of each Medicare enrollee and assignor with which the person allegedly was enrolled at the time of the automobile accident, the amounts allegedly billed to the assignor for which double-damages were sought, the amounts purportedly paid by the assignor as "conditional" payments under the MSP Act, the alleged medical treatments for which those payments were made and the injuries for which the treatments were rendered, the dates of the treatments, and the medical providers who rendered and billed for them. 24-ER-6289-6297. *See* 3-ER-346(¶12)&529-538 as example of

---

[8] MSP Recovery filed motions for class certification the day after Farmers moved for summary judgment. 1-ER-11.

MSP Recovery spreadsheet setting forth line-items for the A.B. claim in No-Fault Case.

The District Court correctly ruled the spreadsheets were not business records of the assignors nor adoptive business records of MSP Recovery but rather were inadmissible hearsay manufactured by MSP Recovery for litigation that lack trustworthiness. *Id*. The District Court also correctly ruled that, apart from admissibility problems, MSP Recovery failed to submit evidence demonstrating the treatments and corresponding alleged payments were for injuries resulting from the automobile accidents, that the payments were actually conditional upon reimbursement under the MSP Act, or that Farmers failed to pay in a manner prohibited by the MSP Act. 1-ER-28-30.

In its Appellants' Opening Brief, MSP Recovery mischaracterizes the arguments and decisions of the District Court.[9] The District Court did not rule the spreadsheets were inadmissible in the face of any argument or proffer by MSP Recovery that it could prove the *contents* of the spreadsheets with admissible

---

[9] *See also, e.g., MAO-MSO Recovery II, LLC v. Mercury Gen.* ("*Mercury*"), 2021 WL 3615905, at *6 (C.D. Cal. Aug. 12, 2021) ("Plaintiffs seemingly 'play[] fast and loose with facts, corporate entities, and adverse judicial rulings' as other courts have experienced.") (quoting *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018 WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018)); *MSPA Claims 1, LLC v. Infinity Auto Ins. Co.*, 2017 WL 4286852, at *2 (S.D. Fla. Sept. 27, 2017) (pointing out plaintiff's "gross mischaracterization" of caselaw).

evidence at trial. AOB 29. In fact, MSP Recovery repeatedly argued to the District Court that the spreadsheets themselves were admissible as business records because the spreadsheets purportedly were the "raw data" the assignors provided to MSP Recovery's affiliate MSP Recovery, LLC. Furthermore, MSP Recovery never produced to Farmers the assignors' purported "raw data" that MSP Recovery now insinuates to this Court it might use at trial to prove the contents of the spreadsheets. 1-ER-25-28(n.8). Moreover, MSP Recovery does not even have such material, or control over or access to it, according to its own discovery responses. 3-ER-563-569(RFP Responses 1-3).

Based on a failure to submit sufficient evidence to raise a triable issue of material fact on any of MSP Recovery's claims, the District Court correctly entered summary judgment for Farmers. 1-ER-25-30.

### b. Statute of limitations.

Additionally, the District Court correctly ruled that the three-year statute of limitations barred 94 of 96 claims in the No-Fault Case and 35 of 55 claims in the Settlement Case. 1-ER-24-25, 47-48. The District Court ruled that Farmers' notice of the underlying insurance claims was provided to Medicare more than three years before the claims were alleged; and, contrary to MSP Recovery's assertion, the claims are "distinct" and thus do not "relate back" to the 2017 initial complaints, which had no alleged claims, which were filed before MSP Recovery owned

assignments for 115 of the 151 claims, and to which one of the Plaintiffs/Appellants (with its respective alleged assignments) was not even a party. 1-ER-24-25, 47-48.

### c. Failure to prove Article III standing.

The District Court also correctly found that because MSP Recovery "failed to adduce admissible evidence that the payments for which they seek reimbursement were made to compensate medical providers for the reasonable and necessary treatment of injuries sustained by Medicare beneficiaries in automobile accidents covered by one of defendants' insurance policies," MSP Recovery also "failed to establish that their assignors suffered any injury-in-fact or have standing to sue under the MSP Act." 1-ER-30-31, 53-54. Although this last piece of the District Court's order is not essential to affirm summary judgment on all claims given the lack of proof to raise a triable issue of fact, this corollary finding of lack of proof of standing is equally supported and should be affirmed.

### B. Statutory background: The law of Medicare and its MSP Act.

A brief review of the MSP Act provides helpful background.

### 1. The MSP Act, conditional payments, and the private right of action.

In 1980, Congress enacted the MSP Act to change the sequence of payers and make Medicare insurance secondary to any "primary plan" obligated to pay a

Medicare recipient's medical expenses from a covered loss, including, *inter alia*, no-fault insurance and a third-party tortfeasor's automobile insurance. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 3420796, at *1 (C.D. Ill. July 13, 2018) (citing *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013)); §1395y *et seq.* Under the MSP Act provisions, Medicare is authorized to make secondary payments "conditional " on reimbursement if a primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly." §1395y(b)(2)(B)(i). "Promptly" is defined as payment "within 120 days after receipt of the claim." 42 C.F.R. §411.21. Also, Medicare is prohibited from paying where there is no-fault insurance "until the beneficiary has exhausted his or her remedies under no-fault insurance." 42 C.F.R. §411.51(b). If the foregoing are satisfied, Medicare may make a "conditional" payment and the primary plan must reimburse Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." §1395y(b)(2)(B)(i)-(ii). If Medicare is not reimbursed within 60 days after notice to the primary plan, Medicare may charge interest and also bring suit for double damages. §1395y(b)(2)(B)(ii)-(iii).

## 2. Medicare Advantage Organizations (MAOs).

Part C of the Medicare Act allows Medicare enrollees to obtain their Medicare benefits through private insurers, called Medicare Advantage

25

Organizations ("MAOs"), instead of receiving direct benefits from the government. §1395w-21(a). An MAO is a private, for-profit company that contracts with CMS, the federal agency that administers Medicare, to provide Medicare coverage based on a set flat fee per enrollee and assumes the risks related to insuring the beneficiaries. §1395w-21 and 1395w-23.

MAOs have the option of making "conditional" payments. §1395w-22(a)(4). But, under 42 C.F.R. §422.108(b), in order to make any conditional payments, an MAO "must" identify any primary payers and the amounts payable by them and coordinate its benefits with those primary payers.[10]

The MSP Act at §1395y(b)(3)(A) provides for a *private* cause of action for damages against primary plans that fail to provide for primary payment or

---

[10] To facilitate this coordination of benefits, MAOs receive monthly reports from Medicare containing primary plans' "Section 111" reporting to CMS. Primary plans are required to electronically report to CMS payments on no-fault claims and settlements on liability claims involving Medicare beneficiaries, including the identities of the reporting entities and beneficiaries. §1395y(b)(7)(A)(i)-(ii); MEDICARE, MEDICAID, AND SCHIP EXTENSION ACT OF 2007, PL 110-173, December 29, 2007, 121 Stat 2492; CMS User Guide on Reporting §6.3, and CMS Plan Communication User Guide, May 31, 2019 at §7.6, 3-ER-543-558. *See* example of reports sent to one of MSP Recovery's assignors, SummaCare, Inc. in 2016, before these lawsuits. 26-ER-6708-6709. Thus, MSP Recovery's assertion (AOB 19) that "Plaintiffs have no direct access" to insurers' reporting to Medicare is misleading, as its assignors get this information. Further, the Medicare Act and its provisions are clear on notice—insurers are only required to notify CMS, not MAOs or MAO-subcontractors. §1395y(b)(8)(A)(ii); 42 C.F.R. §411.25. The District Court confirmed this (1-ER-59, 66), and that Farmers reported all of the reportable injury claims in the Fourth Amended Complaints. 2-ER-188(Fact 21), 2-ER-263(Fact 21).

appropriate reimbursement of conditional payments. Some federal circuits have extended this cause of action to MAOs, although the Ninth Circuit has not ruled directly on this. *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 685 F.3d 353, 367 (3d Cir. 2012). Courts have held, however, that the MSP Act and its private right of action is not intended to create a "boondoggle." *Przedwojewski v. NHS Mgmt., LLC*, 2012 WL 12895655, at *6 (N.D. Ala. Feb. 17, 2012), *aff'd*, 503 F.App'x 891 (11th Cir. 2013) (citing §1395y(b)(3)(A)).

### 3. "First Tier" and "Downstream" entities.[11]

Only one Circuit has addressed whether MAO subcontractors may bring a private cause of action under MSP Act. The Eleventh Circuit Court of Appeal held that subcontractors of MAOs are not automatically precluded from suing under the MSP Act, stating: "downstream actors that have made conditional payments in an MAO's stead or that have reimbursed an MAO for its conditional payment can bring suit for double damages against the primary payer." *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1316 (11th Cir. 2020). However, the MAO-subcontractor must possess the right to seek reimbursement from the

---

[11] Here, MSP Recovery sued pursuant to assignments from several MAO-subcontractors, which they refer to as "first-tier" and "downstream" entities. 1-ER-9, 3-ER-463-478(¶¶60-92).

primary plan, as opposed to that right being vested with the MAO. *See Mercury,* 2021 WL 3615905, at *4, appeal pending No. 21-56396 ("first-tier" or "downstream" subcontractor of MAO never owned right for reimbursement, such right belonged to MAO, and subcontractor had no reimbursement rights to assign to MSP Recovery).

## VIII.

## SUMMARY OF THE ARGUMENT

After large-scale discovery and five iterations of the pleadings in two cases, on summary judgment the District Court: (i) correctly concluded that MSP Recovery failed to submit evidence sufficient to raise a triable issue of material fact on each of its 151 claims, given that it relied primarily on its own made-for-litigation spreadsheets that were inadmissible and lacked evidence on elements of the claims; (ii) correctly concluded that the claims in the Fourth Amended Complaints did not relate back to the initial complaints and thus 129 of the 151 claims were time barred; and (iii) correctly entered summary judgments, as opposed to dismissals without prejudice. The District Court's judgments should be affirmed in all respects.

# IX.

# ARGUMENT

## A. Standard of review.

An order granting summary judgment generally is reviewed *de novo. Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 447 (9th Cir. 2018). Likewise, judgment on statute of limitations grounds and on standing is reviewed *de novo*. *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010). However, a district court's decision on the inadmissibility of evidence is reviewed for an abuse of discretion "even when the rulings determine the outcome of a motion for summary judgment." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995) ("We review district court rulings on admissibility under exceptions to the hearsay rule for an abuse of discretion."); *Morgan v. Buttigieg*, 2022 WL 1566976, at *2 (9th Cir. May 18, 2022) ("The district court has 'wide discretion' in deciding whether evidence satisfies Rule 803(6)'s 'trustworthiness standard[.]'").

An abuse of discretion will be found only if the appellate court is firmly convinced that "the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir.

2000); *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (District Court abuses its discretion only if it's decision is illogical, implausible, or without support in inferences that may be drawn from the facts in the record). The Ninth Circuit will not substitute its judgment for that of the District Court simply because it would have reached a different result. *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 887 (9th Cir. 2001) ("[T]he [abuse of discretion] standard means that within substantial margins the district court could be upheld had it determined the issue one way or the other.").

### B. The District Court correctly ruled MSP Recovery's evidence was inadmissible and insufficient.

MSP Recovery challenges the District Court's rulings on its evidence, claiming that its spreadsheets were admissible under Rule 56 and Rule 803(6) "Exceptions to the Rule Against Hearsay." AOB 33-53, 1-ER-26. On summary judgment, the District Court reviewed MSP Recovery's 13 declarations and spreadsheets, both those attached to the declaration of affiliate MSP Recovery LLC's Chief Information Officer Christopher Miranda[12] and the assignors' declarations, and deemed them inadmissible and ineffectual:

---

[12] Mr. Miranda is an attorney who previously worked for one of MSP Recovery's law firms. 2-ER-175(Fact 10).

With respect to plaintiffs' first argument, the spreadsheets are not plaintiffs' business records, and do not fall within the business records exception to hearsay.... Plaintiffs acknowledge that 'the spreadsheets ... are a compilation of Raw Assignor data, Third-Party data, and defendant discovery.' GDF No. 4. In other words, the spreadsheets were created during this litigation for purposes of this litigation, and are based on information allegedly obtained from third-parties and the defendants during the discovery period. These spreadsheets are not business records under Rule 803(6), as `[b]usiness records prepared solely for purposes of litigation lack trustworthiness." …

Plaintiffs' second argument, that the spreadsheets are admissible as adoptive business records, fails for the same reason. While "records a business receives from others are admissible under [Rule] 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records," ... the fact remains that plaintiffs' spreadsheets were created by plaintiffs for the purposes of this litigation, and the other elements of Rule 803(6) have not been established. Furthermore, the spreadsheets lack trustworthiness....

1-ER-26-27 (internal citations omitted).[13]

The District Court also analyzed the 13 declarations, and found they too did

not support compliance with Rule 803(6)(1-ER-27-28,n.8),[14] stating, *inter alia*:

---

[13] Other courts also have found MSP Recovery's spreadsheets and data-handling to be flawed and unreliable. *See, e.g.*, *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, at *6, *8, n.8, n.17 (S.D.N.Y. Mar. 26, 2021) (explaining court had "reason to distrust Plaintiff's data compilation and analytic processes," was "baffled" by Plaintiff's sworn declaration containing "analysis" "riddled with basic errors, including misreading Plaintiff's [spreadsheet] exhibits," and stating "Plaintiff has no excuse for such sloppiness, and this is not the first time that it has been admonished for these sorts of errors").

> The assignor declarations do not establish that the claims data attached to their declarations as 'Exhibit A' was 'made at or near the time by ... someone with knowledge' or 'was kept in the course of a regularly conducted activity of a business.' See [Rule] 803(6). Rather, the opposite appears to be the case…. 1-ER-27.

Significantly, the District Court found that, regardless of inadmissibility, MSP Recovery failed to proffer evidence that the payments at issue were for treatment for injuries resulting from automobile accidents covered under the Farmers' policies, were "conditional" under the MSP Act, or that Farmers failed to pay or reimburse any bills in a manner prohibited by the MSP Act:

> Additionally, even if the Court were to consider the spreadsheets, they do not suffice to raise a triable issue of material fact with respect to one of the three elements for the private cause of action, i.e., that defendants were responsible for reimbursing plaintiffs' assignors for the payments contained in plaintiffs' spreadsheets…. Plaintiffs' spreadsheets do not establish, for example, the identity of the recipient of the payments contained therein, that the payments at issue arose from automobile accidents, or that the payments for which they seek reimbursement were "conditional" payments. 1-ER-28, 51.

---

[14] Contrary to MSP Recovery's assertions, the District Court did not "disregard Plaintiffs' declarations," nor did it "not take Plaintiffs' declarations and exhibits as true." AOB 35. The District Court analyzed the declarations in detail and determined they contained inadmissible hearsay and, even if admissible, not sufficient to withstand summary judgment. The District Court also did not resolve disputed facts (AOB 36) but instead concluded MSP Recovery's declarations and spreadsheets did not create any dispute of material fact. 1-ER-28.

### 1. MSP Recovery relied on inadmissible self-created spreadsheets.

As the District Court explained:

> Plaintiffs do not claim that they have copies of the bills that their assignors received, copies of documents evidencing the payments their assignors made, or even accounting ledgers that would establish whether their assignors made any covered payments related to any of plaintiffs' … claims. Rather, plaintiffs claim that 'any evidence of bills payments, or accounting ledgers would all be found' in the spreadsheets they have attached to the Miranda declaration." 1-ER-25(Fact 4).

Specifically, MSP Recovery submitted 400 pages of "PDFs" of "data" it assembled into spreadsheets attached to the Declaration of Mr. Miranda, and another 1,500 pages of "data" it assembled into spreadsheets attached in "PDF" form to 10 assignor witness declarations.[15] 2-ER-145, 10-ER-2159, 19-ER-4713-6693. As the District Court held, all of the spreadsheets were created by or for MSP Recovery, and they are not the assignors' raw-data, which the assignors' purportedly transmitted to MSP Recovery's affiliate MSP Recovery, LLC:[16]

> [P]laintiffs contend that each Exhibit A [i.e., spreadsheet] contains the assignors' raw data, and that therefore plaintiffs'

---

[15] Apart from issues of inadmissibility and insufficiency, MSP Recovery did not submit declarations from eight assignors relating to 44 of its 151 claims, nor did it submit any spreadsheets for 31 of its 151 claims. 19-ER-4713-6693.

[16] All of the spreadsheets contain identifying fields with the MSP Recovery moniker, such as "msp_client", "msp_mrd_id", and "msp_crd_batch." *See, e.g.*, Miranda Decl. at 24-ER-6289; Melissa Rusk Decl. Ex. A., at 20-ER-5142-5188.

spreadsheets are admissible as business records. See Plfs' Supp. at 2-5. The Court reiterates that plaintiffs' argument is belied by the assignor declarations, which each state that "claims data is attached as Exhibit A" and that the "claims data comes directly from the Data Files that [the assignor] transferred to [plaintiffs]." See, e.g., Dkt. 314-15 at 431-432 (emphasis added). It is also belied by plaintiffs' supplemental brief, which acknowledges that "the evidence attached to the Miranda and assignor declarations is drawn directly from each assignor's business records." Plfs' Supp. at 3. Tellingly, the assignor declarations never state the spreadsheets are their business records. In sum, it appears each Exhibit A was created by plaintiffs. Crucially, none of plaintiffs' assignors attached the actual "Data Files" they allegedly sent to plaintiffs. Likewise, plaintiffs did not include the original records from which they allege they created the spreadsheets attached to the Miranda declaration. 1-ER-27-28(n.8).

MSP Recovery admitted that to create the spreadsheets, its affiliate MSP Recovery, LLC received health-care-related "data" assembled by all assignors for all of the treatment of their enrollees (all healthcare, not just automobile-accident-related), and then MSP Recovery, LLC mixed that "data" with "other information" received from third-party sources, including outside paid vendors that access yet other third-party information, stating "[t]he spreadsheets Defendants refer to are merely a summary and compilation of Raw Assignor data, Third-Party Data, and Defendant Discovery." 2-ER-167:21-168:4; *see also* 2-ER-165-171(Facts 3-6 and record citations therein), 24-ER-6262-6267 (¶¶11, 13, 18). More specifically, Mr. Miranda testified MSP Recovery, LLC gathered and mixed items collected from a host of third-party sources that, in addition to the purported assignors' data, he referred to as "supplemental data" and "enrichment data." 26-ER-6833-6903. Mr.

Miranda identified as among these sources: Ability Network (a paid vendor that collects information from a CMS database into which a variety of outside sources input material[17]; Insurance Services Office (another vendor that Mr. Miranda described as a "limited third-party voluntary reporting platform"); police crash reports; and other unnamed "supplemental databases." 5-ER-1216(p.13:3-21); 26-ER-6858:4-7,6857:3-10.

MSP Recovery admitted also that its affiliate altered the data or created some of the content of the spreadsheets solely for making argument in litigation. For example, MSP Recovery admitted for the claim seeking damages for alleged payments for medical treatment of "E.R." in the No-Fault Case that MSP Recovery, LLC changed the "$0" in the "data" to "$21.67" for the amount supposedly billed to the assignor because it wanted to use the higher "commercial rate" in the litigation, even though the assignor was never billed this amount nor was it in the assignor's "data." 2-ER-176(Fact 11), 26-ER-6708-6709, 24-ER-6287(¶¶54-55).[18]

---

[17] *See MSP Recovery Claims, Series LLC v. Am. Nat'l Prop. & Cas. Co.*, 550 F.Supp.3d 1311, 1319-21 (S.D. Fla. 2021) (where MSP Recovery relied on Ability Network report to try to prove defendant insured claim, court deemed the material inadmissible hearsay and otherwise not persuasive because MSP Recovery failed to show who created report contents or how they were determined).

[18] This is only one example. Given that MSP Recovery failed to produce assignor "data" in its original, unaltered state, Farmers had no way of determining every

From this universe of collected and created "data," MSP Recovery, LLC then eliminated the material it did not want to use in litigation, selected the numbers and codes it wanted to use for each claim it chose to allege, and manufactured the spreadsheets. *Id.*, 2-ER-79-80, 24-ER-6263(¶7).[19]

### a.      The District Court correctly applied Rule 803(6).

A review of Rule 803(6) confirms the District Court was correct in deeming MSP Recovery's "proof" inadmissible. Applying Rule 803(6)(A), MSP Recovery's data spreadsheets were not "made at or near the time by–or from information transmitted by–someone with knowledge." Rather, they were admittedly created by affiliate MSP Recovery, LLC often years after the alleged underlying medical transactions from information MSP Recovery itself asserted was made by multiple third-parties, namely MSP Recovery's assignors and outside paid vendors. 2-ER-165-171(Facts 3-6 and record citations therein), 24-ER-6262-6267(¶¶11, 13, 18), 16-ER-4075:22-4076:20, 17-ER-4119:9-18, 17-ER-4261(210:1-19). Applying Rule 803(6)(B) and (C), the spreadsheets and their data were not "kept [by each assignor] in the course of a regularly conducted activity of

---

instance where MSP Recovery fabricated or changed numbers in the spreadsheets. 3-ER-572(Response to RFP 10).

[19] In another case by one of MSP Recovery's affiliates, the plaintiff's lawyer likened MSP Recovery's spreadsheets to baking a "cake" with the lawyers adding ingredients and "bak[ing]" the data to the point "it is not the [assignor's] information anymore." 4-ER-742-743.

a business, organization, occupation, or calling" and creating the spreadsheets was not "a regular practice of that activity" by each assignor. Rather, all of the spreadsheets were created by MSP Recovery during this litigation for purposes of this litigation. (*Id*.) Further, applying Rule 803(6)(D), none of the conditions of (A)-(C) were shown by the testimony of anyone. Finally, applying Rule 803(6)(E), Farmers showed and the District Court agreed that that the made-for-litigation spreadsheets lacked trustworthiness. 1-ER-26 (and cases therein). "[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness … because … many of the normal checks upon the accuracy of business records are not operative." *Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1259 (9th Cir. 1984) (internal quotations and citations omitted) (audit reports prepared in anticipation of litigation not admissible under Rule 803(6)).[20]

---

[20] The Ninth Circuit in *Paddack* also held the reports were not admissible as summary of voluminous writings under Rule 1006 because they were based in part on inadmissible hearsay and the underlying materials were not made available to the opposing party, which is entitled to an opportunity to verify the reliability and accuracy of such summary. *Id*. at 1261. "The proponent of a summary must establish a foundation that (1) the underlying materials upon which the summary is based are admissible in evidence; and (2) the underlying documents were made available to the opposing party for inspection." *Id*. at 1259 (internal citations omitted). Like in *Paddack*, MSP Recovery failed to establish these conditions, even though it suggests the spreadsheets should be admissible under Rule 1006. AOB 46-47.

   **b.**  **MSP Recovery's unsubstantiated speculation that it may be able to replace its spreadsheets with admissible evidence at trial is precluded and futile.**

On appeal, MSP Recovery for the first time argues the District Court should not have ruled on "the current form of the data—the spreadsheets attached to declarations" but instead should have determined if MSP Recovery could somehow submit the content at trial in an admissible form. AOB 40. But, MSP Recovery never argued or demonstrated to the District Court that the content of the spreadsheets could be offered at trial *in any form other than the inadmissible spreadsheets themselves*. Furthermore, the spreadsheets and related declarations failed to comply with Rule 56, precluding this argument. Even now, MSP Recovery merely hypothesizes there might be "some information" it could gather to use at trial—an unsubstantiated and inadequate basis to reverse the summary judgments and resuscitate these cases. AOB 40.

MSP Recovery repeatedly told the District Court that the spreadsheets themselves were admissible as business records because they were the assignors' "raw data." For example, in its opposition to summary judgment, MSP Recovery asserted:

> **MSP's spreadsheets** meet the requirements … for admissibility of third party records … under Rule 803(6).… Therefore, these documents **are properly admissible** and should be considered in opposition to the MSJ.

38

(emphasis added). SER-052:21-053:2. Then again, in the supplemental briefing on the issue of inadmissibility, MSP Recovery argued:

> **[T]he Exhibit Evidence attached to the assignor and Miranda declarations** contain the MA assignor's business records—admissible evidence.... [T]here are no trustworthiness concerns as to the Exhibit As, and **they are admissible both as business records and as adoptive business records.**

(emphasis added). 2-ER-80-82.

Suddenly, on appeal MSP Recovery argues the District Court should have considered whether MSP Recovery could prove the contents of its spreadsheets with different evidence at trial. (AOB 39-40). But, MSP Recovery cannot raise this for the first time on appeal, when it failed to argue this to the District Court and specify the evidence it would rely on at trial. *See* Advisory Committee Note to 2010 Amendment to Rule 56(c)(2) ("burden is on proponent to show the material is admissible as presented or explain the admissible form that is anticipated"); *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) ("Though parties may identify evidence at summary judgment that would be inadmissible at trial, they must demonstrate that the evidence may be offered at trial in an admissible form.").

Moreover, while a party does not necessarily have to produce evidence at summary judgment in a form that would be admissible at trial, the party still must satisfy the requirements of Rule 56. *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). Here, MSP Recovery fails for a number of reasons

including: (i) the made-for-litigation spreadsheets which are inherently untrustworthy do not exist in any admissible form; and (ii) the declarations fail to satisfy Rule 56(c)(4) to the extent they attempt to rehabilitate the spreadsheets and because the declarants do not have personal knowledge and are not competent to testify about the creation, contents and items and events the spreadsheets purport to describe.

This entire line of argument is vague speculation, as MSP Recovery fails to explain even to this Court the admissible form of evidence that is anticipated. Instead, it postulates that "[s]ome information could also be obtained for trial by subpoena or would be obtainable from Farmers itself," and separately refers to arguments in the District Court about "printouts of the Assignor's own data." AOB 40. Yet, MSP Recovery never identifies to whom subpoenas would be issued; and it already conducted discovery from Farmers and gathered materials from its assignors on the 151 claims. Additionally, MSP Recovery cannot now contend it would prove the content of the spreadsheets with the "Assignors' own data from the Assignors' own databases" because: it consistently maintained the spreadsheets themselves *were* the assignors' data; and despite comprehensive discovery requests it never produced or proffered anything other than the spreadsheets, including its assignors' actual unaltered raw data – a fact directly addressed by the District Court: "Here, plaintiffs and their assignors have failed to offer the original Data

Files, i.e., the records of plaintiffs' assignors." 1-ER-28(n.8).[21]

### c. The declarations do not change the analysis.

Neither the assignors' nor Mr. Miranda's declaration impact the conclusion that the spreadsheets are *not* the assignors' business records.[22] Instead, these declarations crystalize that the never-produced "original data that the assignor[s] transmitted" or "Data Files" are distinct from the MSP Recovery-manufactured spreadsheets, as the District Court found. 19-ER-4713-6259.

For example, assignor declarant Ms. Rusk stated assignor SummaCare, Inc.

---

[21] In RFPs, Farmers asked MSP Recovery to produce, *inter alia*, for each of the claims: "copies of all data without elimination of any data preceding or after the date of loss, and without elimination of any fields or types of data, and without addition of any data, in its/their original form, provided to [MSP Recovery and its affiliates] from any ASSIGNORS; [and] to the extent not produced in response to the items above, copies of all claims data, in its/their original form, provided" by any of the same entities/persons. 3-ER-564(Request 1(h),(i)). For each of the claims, Farmers also asked for "all communications, correspondence, and all other DOCUMENTS showing or relating to payments made by or charges or costs incurred by the ASSIGNOR ... for which PLAINTIFFS claim they are owed money and/or damages." 3-ER-567-568(Requests 2(l),3(n)). In response to the forgoing and all of the discovery, MSP Recovery produced only its homemade spreadsheets with the MSP monikers and stated it has "no other responsive documents within their possession, custody, or control." 3-ER-563-569(Responses to RFP 1-3).

[22] The declaration by MSP Recovery's purported expert Adam E. Block, PH.D. does not address the spreadsheets. Accordingly, the District Court correctly found it was "not of sufficient quantum or quality to create genuine issues of material fact." 1-ER-28(n.9). Equally, the declaration of MSP Recovery's counsel, David DaPonte, adds nothing to the assessment of the spreadsheets because Mr. DaPonte did not attach or attempt to authenticate any MSP Recovery spreadsheets, nor does he address the elements of MSP Recovery's claims. 10-ER-2159-2169.

"transferred data about its Medicare beneficiaries," which Ms. Rusk defined as "Data Files." *Id.,* ¶4. But, as specifically pointed out by the District Court (1-ER-27-28(n.8), Ms. Rusk conceded these "Data Files" were different from the "claims data" in her declaration spreadsheet because she explained the spreadsheet "claims data" came *from* the "Data Files" (20-ER-5143(¶¶5-6). Further, none of the assignor declarations contained testimony supporting all of Rule 803(6)'s requirements to establish admissibility, including that any of the purported assignor data was input into the assignors' databases at or near the time of the relevant events or the persons who entered the data had knowledge of the relevant events. 19-ER-4713-6259.[23] These failures under Rule 803(6) also negate the requirements for admissibility as adoptive business records. *United States v. Childs,* 5 F.3d 1328, 1333-34 (9th Cir. 1993) (exhibits may be admitted as business records of an entity, although that entity was not the maker of those records, where the other requirements of Rule 803(6) are met and the circumstances indicate the records are trustworthy).

Likewise, Mr. Miranda, an attorney, carefully stated each of "the

---

[23] The language in Ms. Rusk's declaration is nearly identical to the language in the declarations for eight other assignors (19-ER-4713-5940); and the remaining tenth declaration says even less as it does not even attempt to compare data in spreadsheets to data from assignors nor address how data was created (23-ER-5749-5751).

[assignor's] *Data Files* are identical to the business records created and maintained in the regular course of business" and "the [assignor] *Data Files* contain complete and accurate information about [the assignor's] Medicare beneficiaries." 24-ER-6268-6278(¶¶20-41) (emphasis added). But, nowhere did Mr. Miranda state these defined "Data Files" were the ones he attached to his declaration, and he *never* referred to the information in his spreadsheets as those "Data Files" or the "original data that the assignor[s] transmitted." *Id.,* ¶45. Instead, he stated merely "[t]he electronic business records corresponding to … unreimbursed secondary payments are attached [to his declaration] as Exhibits 1 to 18." *Id.* ¶44. Furthermore, Mr. Miranda is not an employee of the assignors and offered no testimony showing he had personal knowledge of the assignors' actions regarding any of the 151 claims or the composition of any of assignors' records. Thus, contrary to MSP Recovery's assertions (AOB 37-39, 48-58), Mr. Miranda was not a qualified witness capable of: establishing the spreadsheets were the assignors' business records, testifying about assignors' record-keeping, or establishing the spreadsheets "reflect" the amounts billed to or paid by assignors, dates of service and payment, or that "procedural and diagnostic codes" were in fact "tied to specific payments that the health plan made." AOB 57. *Moreno v. Los Angeles Cnty. Sheriff's Dep't*, 2015 WL 4652637, at *11 (C.D. Cal. Aug. 3, 2015) (finding records not accompanied by declaration from custodian or other qualified witness as required by Rule 803(6)(d)

were inadmissible).

Moreover, Mr. Miranda works for and claimed to be the "custodian of [MSP Recovery's] records since June of 2018" 2-ER-175(Fact 10), 24-ER-6262(¶2). Yet, he attempted to explain assignors' transfer of "Data Files" starting as far back as 2012, his declaration offered no facts to substantiate any personal knowledge of records supposedly transferred years before his tenure at MSP Recovery, and his only asserted basis was his supposed review of the material itself and some general information about the Medicare industry. AOB 57, 24-ER-6266-6267,6278-6284(¶¶14-16, 42-45).

Courts are not required on summary judgment to accept testimony from persons not qualified to render such testimony. Fed. R. Civ. P. 56(c)(1)(4); *HSBC Ins. Ltd. v. Scanwell Container Line Ltd.*, 2001 WL 1875851, at *3-4 (C.D. Cal. July 25, 2001) (declarant could not authenticate business records of another entity as evidence of damages); *MSP Recovery Claims, Series LLC v. Tower Hill Prime Ins. Co.*, 2022 WL 17839537, at *3-6 (N.D. Fla. Dec. 20, 2022) (granting summary judgment for defendant insurer after rejecting MSP Recovery's deficient evidence from Mr. Miranda and MSP Recovery's assignors (the same type of evidence at issue in these appeals)); *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 (9th Cir. 2002) ("[T]he arguments and statements of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise

valid motion for summary judgment.") (internal quotation marks omitted).

### d. MSP Recovery's cited authority is of no avail.

MSP Recovery's cited authority on appeal further takes MSP Recovery *out* of the business record exception on which it seeks to rely.

For example, MSP Recovery relies on *MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998) for the proposition that "records a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of that business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records." AOB 47. However, unlike in *MRT* where the court admitted a law firm's actual bills maintained by the proffering party, MSP Recovery did not submit to the District Court or Farmers the business records of its assignors, as the District Court found (1-ER-28(n.8)); it submitted homemade spreadsheets that it explained were made up of bits and pieces of multiple third-parties' materials edited and altered by MSP Recovery's affiliate.

MSP Recovery relies on *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040 (9th Cir. 2009) to argue "evidence that has been compiled from a computer database is … admissible as a business record." AOB 44-45. However, MSP Recovery's spreadsheets were not "computer-generated summaries" like those in *U-Haul* at 1043; rather, they were an amalgamation of items plucked from

45

various third-parties' materials that MSP Recovery, LLC chose to put in spreadsheets. Also, unlike in *U-Haul* at 1043, no qualified witness testified the purported assignor data was input into the assignors' databases at or near the time of the relevant event or that the person who entered the data into the databases had knowledge of the relevant event.

MSP Recovery relies on *Nationstar Mortg. LLC v. Saticoy Bay LLC, Series 9229 Millikan Ave.*, 996 F.3d 950, 955-57 (9th Cir. 2021) (AOB 37) for its argument the District Court supposedly overlooked Mr. Miranda's "declaration's detailed explanation of [his] experience, knowledge, and authority." AOB 37. However, Mr. Miranda's declaration discussed his experience at MSP Recovery, LLC, not any personal "experience, knowledge, and authority" with the assignors' record-keeping. Further, *Nationstar* deals with an actual printout from Fannie Mae's internal database introduced by Nationstar through the declaration of Fannie Mae's Assistant Vice President who testified to his personal "knowledge of Fannie Mae's recordkeeping system and the data contained in Fannie Mae's business records." *Nationstar* at 956. Conversely, here all of the spreadsheets were manufactured by MSP Recovery, not the assignor declarants, and were a combination of strategically-selected material from a variety of sources; and, as stated, MSP Recovery's witness Mr. Miranda had no personal knowledge of the assignors' or other third-parties' creation of their own data. 24-ER-6262-6263(¶¶2-

4).[24]

> **2. The District Court properly ruled that MSP Recovery's "proof," apart from inadmissibility, does not raise a triable issue of material fact with respect to critical components of MSP Recovery's claims.**

As the District Court correctly found, even if a court "were to consider the spreadsheets, they do not suffice to raise a triable issue of material fact with respect to one of the three elements for the private cause of action, i.e., that defendants were responsible for reimbursing plaintiffs' assignors for the payments contained in plaintiffs' spreadsheets." 1-ER-28. Specifically, "Plaintiffs spreadsheets do not establish, for example … that the payments at issue arose from automobile accidents, or that the payments for which they seek reimbursement were 'conditional' payments," or that "Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover." 1-ER-28.

---

[24] Finally, while MSP Recovery also seems to argue in these appeals that the spreadsheets are admissible as its own business records (AOB 41) and not as the assignors' or adoptive business records, such an argument is ineffectual; the business records of a collections agency, which has no first-hand knowledge of the activities of and injuries to its assignors, would not prove, *inter alia*, the payment of bills by its assignors, the medical treatments and injuries for which those payments were made or whether the assignors coordinated benefits.

       **a.**      **MSP Recovery failed to prove the alleged payments were for treatments relating to automobile accidents.**

MSP Recovery was required to "prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of each and every item Plaintiffs seek to recover." *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1360 (11th Cir. 2016). This means MSP Recovery had to prove, *inter alia,* that each line item for which it sued was a payment for medical treatment for an injury resulting from the alleged automobile accident. Also, "Defendants may still assert any valid contract defense in arguing against their liability," including that the bills must be reasonable, necessary, and related to the automobile accident. *Allstate*, 835 F.3d at 1361; *State Farm 2021*, 994 F.3d at 876-77; *MSP Recovery, LLC v. Allstate*, 2015 WL 10857402, at *3 (S.D. Fla. June 24, 2015); *Ocean Harbor Cas. Ins. v. MSPA Claims 1, LLC*, 261 So. 3d 637, 645 (Fla. 3d DCA 2018).

Yet, MSP Recovery had no proof the numbers and codes in its spreadsheets were for reasonable and necessary treatments of injuries resulting from the alleged automobile accidents. Indeed, MSP Recovery's spreadsheets contained codes for indisputably non-accident-related treatments including flu shots, glaucoma, and diabetes treatments, malnutrition evaluations, skin melanoma, and fibromyalgia. 4-ER-765-779; SER-136:1-4. Although Mr. Miranda's declaration stated in a single-

sentence conclusion that all of the charges on all of MSP Recovery's spreadsheets were accident related (24-ER-6286(¶52)), the declaration provided no fact basis for that statement, and Mr. Miranda had no personal knowledge of the accidents or treatments nor is he a medical expert; and as such the District Court properly rejected his declaration. 1-ER-17, 25-28.

These evidence deficiencies have been recognized by courts, in addition to the District Court here, as fatal. *State Farm MSJ Order*, 2019 WL 6311987, at *5, *7 (finding same Plaintiffs as here and two other MSP Recovery affiliates failed to prove enrollee's physical therapy treatments were related to injuries sustained in automobile accident, as opposed to pre-accident knee replacement surgery); *MSP Recovery Claims, Series LLC v. AIX Specialty Ins. Co.* ("*AIX*"), 2020 WL 5524854, at *11 n.7 (M.D. Fla. Aug. 10, 2020) (entering summary judgment against one of the same Plaintiffs as here and two other MSP Recovery affiliates that failed to prove "medical expenses were reasonable and necessary," stating: "It is Plaintiffs' burden—not AIX's—to show that the expenses are reasonable and necessary, and they provided no evidence to satisfy that burden"); *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 2022 WL 118387, at *10 (S.D.N.Y. Jan. 11, 2022) (finding spreadsheets of diagnosis codes and medical services used by one of the same Plaintiffs as here to be inadequate and nothing more than "Plaintiff's *ipse dixit*" to link alleged insurance policies to medical services

provided).

### b. MSP Recovery failed to prove payments were "conditional."

Not all payments made by MAOs are for automobile-accident-related treatment, as MAOs are responsible for all of their enrollees' healthcare. Further, not all accident-related payments by MAOs are "conditional." Thus, plaintiffs pursuing an MSP Act private right of action must prove that each payment for which they seek reimbursement was in fact a "conditional payment." *State Farm MSJ Order*, 2019 WL 6311987, at *6-7 (entering summary judgment for defendant and finding "Plaintiff has not demonstrated from record evidence that any payment ... was a 'conditional payment' under the MSP"). Although an MAO may under certain circumstances make a "conditional" payment, an MAO "must" "[i]dentify payers that are primary to Medicare," "[i]dentify the amounts payable by those payers," and "[c]oordinate its benefits to Medicare enrollees with the benefits of the primary payers." 42 C.F.R. §422.108(b). Courts have confirmed this requirement. *State Farm MSJ Order*, 2019 WL 6311987, at *6 (stating "implementing regulations require MAOs to identify and coordinate with primary insurers") (citing 42 C.F.R. §422.108); *see Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016) (42 C.F.R. §422.108(b)(3) "require[es] MAOs to coordinate benefits with primary payers").

50

Here, MSP Recovery failed to submit proof that its assignors' alleged payments for the 151 claims were "conditional" as defined in the statute, including: whether its assignors attempted to "coordinate" or make any determinations about potential available benefits; whether its assignors made determinations that primary insurers had not made or could not reasonably be expected to make payment "promptly" (*i.e.*, within 120 days per §1395y(b)(2)(B)(i)-(ii), 42 C.F.R. §411.21); or the actions its assignors took prior to or after making any of the purported payments. 2-ER-169-187(Facts 4-19).

MSP Recovery instead argues that all payments by MAOs are conditional once "they 'discover[] that another insurer should have paid.'" AOB 11, 58. But, MSP Recovery had no proof the alleged payments were even related to automobile accidents, let alone that Farmers "should have paid" for them. MSP Recovery's reasoning as to why it needs no proof is circular and fails.[25]

---

[25] MSP Recovery also points to the Miranda and assignor declarations as proof that payments were "conditional" (AOB 57). But Mr. Miranda had no personal knowledge of the alleged payments or actions of the assignors; and none of the assignors' declarations addressed any of the criteria for conditional payments, or even referred to payments as conditional.

> **c.     MSP Recovery offered no proof Farmers initially failed to pay any bills.**

The MSP Act private cause of action may only be brought against a primary plan "which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." §1395y(b)(3)(A).  The term "fails" "connotes some omission, fault, or negligence on the part of the person who has failed to do something." *Williams v. Taylor*, 529 U.S. 420, 421 (2000). The MSP Act requires evidence that a defendant acted "evasively" or with "the kind of recalcitrance Congress had in mind when it created a private action for double damages." *Netro v. Greater Baltimore Med. Ctr., Inc*., 891 F.3d 522, 529 (4th Cir. 2018); *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1309 (11th Cir. 2006) (rejecting interpretation of MSP Act that would deny insurer "opportunity to reimburse Medicare *after* responsibility was established but before the [double damages] penalty attached") (emphasis original).

Yet, here too, MSP Recovery submitted no proof Farmers (i) received a bill from a medical provider it was obligated to pay but then failed to pay (and which an alleged assignor ultimately paid), or (ii) received any request for reimbursement by the MAO or MAO-subcontractor it was obligated to pay and then failed to do

so—for any of the 151 claims. 2-ER-172-184(Facts 7,18).[26] Further, even if Farmers knew of an actual bill or payment (of which there was no proof), the failure to pay must be for a reason forbidden under the MSP Act; and again, MSP indisputably has no proof. *Davita Inc. v. Virginia Mason Mem'l Hosp.*, 981 F.3d 679, 692 (9th Cir. 2020) (holding ordinary billing dispute does not constitute MSP Act claim because failure to pay must be "for a reason forbidden by either paragraph (1) or (2)(A)").

### C. The District Court correctly found 129 of MSP Recovery's claims were time-barred.

The District Court found that 94 of MSP Recovery's 96 claims in the No-Fault Case and 35 of 55 claims in the Settlement Case were barred by the three-year statute of limitations set forth in §1395y(b)(2)(B)(iii). 1-ER-24-25, 47-48. MSP Recovery did not dispute on summary judgment that the three-year statute of limitations applies[27] and is triggered by an automobile insurer's notice to CMS,[28]

---

[26] Instead, MSP Recovery argued it was not required to prove Farmers previously improperly failed to pay or reimburse on any bills, asserting Farmers' reporting a *claim* to CMS is sufficient—essentially strict liability for bills Farmers may have never even received. SER-053-058. MSP Recovery's assertion here that the District Court misapplied *Glover* is misdirection. AOB 56. The *Glover* court's discussion of a defendant demonstrating its responsibility is distinct from any obligation to reimburse a specific bill or payment.

[27] The District Court applied this three-year limitations period to the private cause of action. 1-ER-55-67. MSP Recovery does not challenge this on appeal. AOB 61.

nor did it dispute that all of the time-barred claims were reported by Farmers to CMS more than three years before the claims were added to these lawsuits; and MSP Recovery does not dispute these findings here. AOB 60-61. Instead, MSP Recovery continues to erroneously assert that its claims are not time-barred because they "relate back to the filing of the initial complaint on March 31, 2017" (AOB 60-65) even though: one of the two Plaintiffs in the Fourth Amended Complaints (MSP Recovery Claims, Series LLC) was not part of the initial complaint and alleged it is the owner of rights under 23 of the 25 implicated assignments (2-ER-188-233(Facts 22-92)); 3-ER-263-290(Facts 22-90); 8-ER-1966-2016); in total 115 claims in the Fourth Amended Complaints are pursuant to assignments none of the MSP Recovery Plaintiffs owned when the initial complaints were filed but were acquired years later (*Id*., 3-ER-354(¶43), 4-ER-748-749, 4-ER-799(¶44), 5-ER-1173-1175); 19 of the Farmers defendants in the Fourth Amended Complaints were not in the initial pleadings; and *none* of the 151 claims in the Fourth Amended Complaint were in the initial complaints. 8-ER-1966, 1981(¶¶57-58), 1994, 2006(¶¶48-49), 3-ER-448-507, 4-ER-893-943.

---

[28] The Magistrate and District Court held the "notice" under §1395y(b)(2)(B)(iii) is the Section 111 reporting by the insurer to CMS. 1-ER-55-59,66-67. MSP Recovery also does not challenge this on appeal. AOB 61.

The District Court "disagree[d]" with MSP Recovery's position, finding that MSP Recovery's claims did not relate back to their initial complaints filed on March 31, 2017:

> Here, each of plaintiffs' claims is distinct, featuring a specific Medicare plan making payments on behalf of a specific individual, as a result of injuries specific to that individual. Additionally, each claim features a different insurance policy, with a particular insurer. As defendants correctly note, "[t]he only relationship among the claims is that these two Plaintiffs ... purport to possess the right to try to collect" on them. Reply at 29. Plaintiffs provide no authority suggesting that application of the relation back doctrine is appropriate in these circumstances. Rather, "if a subsequent complaint alleges new claims that are `distinct in time and place' and excluded from a prior complaint, there is no relation back." [Citations omitted.] 1-ER-24-25, 47-48.

Fed. R. Civ. P. 15(c) allows an amended pleading to "relate[] back to the date of the original pleading" when the amended claims arise "out of the same conduct, transaction, or occurrence" and where it changes a party the defendant "received such notice of the institution of the action that it will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(B)-(C); *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010). However, as the District Court properly found, the 151 claims do not relate back to the filing of their initial complaint on March 31, 2017 because none of MSP Recovery's claims arise "out of the same conduct, transaction, or occurrence" as any other claim. 1-ER-24-25, 47-48.

Each claim for damages is distinct, involving a separate alleged Medicare plan that allegedly made specific payments under specific circumstances for an

individual patient, in a separate automobile accident, suffering particular injuries, receiving particular medical treatment with unique alleged line-item payments and/or incurred charges. Each claim sought payment pursuant to an individual automobile insurance policy with a particular Farmers entity, which such policy has specific coverage types and amounts, specific terms, is governed by a particular state's law, and to which Farmers can raise all policy-based defenses. §1395y(b)(2)(B)(ii) (Plaintiffs must "demonstrate[] that such primary plan has or had a responsibility to make payment with respect to such item or service"); *DaVita*, 981 F.3d at 692 (insurer able to raise all defenses to payment). Each claim also is brought pursuant to a particular assignment between a specific MAO or MAO subcontractor and one of MSP Recovery's affiliates (some acquired after the filing of the initial complaints here), which assignment is subject to particularized arguments regarding defects and scope, including significant exclusions of swaths of claims.

The time-barred claims in the Fourth Amended Complaints were not alleged in and do not arise out of the same conduct, transaction, or occurrence as alleged in the initial complaints, which contained no allegations of any accidents or any payments and merely included the initials of two purported Medicare beneficiaries for each case (not any of the 151 persons). 8-ER-1981(¶¶57-58), 8-ER-2006(¶¶48-49).

56

The only relationship among the claims is that MSP Recovery, part of a collections outfit, purports to possess the right to try to collect. This is not enough. MSP Recovery cannot be allowed to have recently-alleged and even recently-acquired claims relate back five years to complaints that alleged no claims at all. By MSP Recovery's theory, MSP Recovery could continue to gather assignments and continue to add claims into these two cases regardless of how long ago they accrued—claims that if brought alone would be time-barred—with complete impunity.

MSP Recovery's assertion that *ASARCO, LLC v. Union Pac. R. Co.* ("*ASARCO*"), 765 F.3d 999, 1006 (9th Cir. 2014) necessitates a different result is incorrect. AOB 61-65. In *ASARCO*, the 9th Circuit held that ASARCO's first amended complaint against Union Pacific related back to its original complaint filed just two months earlier because both complaints concerned the parties' same "historical activities" at the same real property seeking the same monetary contribution to the site's cleanup expenses based on the same consent decree, with "the same kind of evidence" to be offered under both complaints. *ASARCO* at 1007. These "factual overlaps" were enough to satisfy the relation back doctrine. *Id.* As discussed above, the same is not true here. Accordingly, MSP Recovery's claims do not "relate back to the filing of the initial complaint on March 31, 2017,"

and the District Court's finding that 129 of MSP Recovery's remaining 151 claims were time-barred should be affirmed.

### D. The District Court's procedures were proper.

MSP Recovery asserts that once the District Court decided that MSP Recovery had failed to submit evidence of injury, the District Court should have: (i) dismissed the cases *without prejudice* rather than enter judgment and (ii) refrained from addressing the statute of limitations bar. AOB 6, 28, 31-33. MSP Recovery seeks this outcome because MSP Recovery then would be free to try to re-litigate the same claims[29] and because the District Court judgment presents a blow to MSP Recovery's litigation model. As here, MSP Recovery routinely files lawsuits and then conducts discovery to try to find hoped-for claims to later inject by way of repeated amendments; and, that model is compromised if the statute of limitations clock is ticking on claims added in the amendments. *See e.g., N.Y. Cent.; State Farm 2021*. But MSP Recovery's arguments about procedure are without merit.

---

[29] MSP Recovery and its affiliates are serial litigants that have filed over 700 lawsuits, many repeat lawsuits against the same defendants. In one instance, it was ordered by a federal court to pay more than $300,000 in attorney's fees for suing same insurer repeatedly on the same claims. *MSP Recovery Claims, Series LLC v. Hartford Fin. Servs.*, 2021 WL 5563982 (D. Conn. Nov. 29, 2021).

68522435;1

These two cases were fully litigated after multiple amendments to the pleadings, multiple motions to dismiss, sweeping discovery and discovery motions, and five years of intense litigation at great cost to Farmers. The final ruling that MSP Recovery failed to prove the claims that it chose to litigate is, and can only be, a decision on the merits and not the equivalent of a mere threshold dismissal without prejudice. The District Court's rulings on the statute of limitations should stand, as it would be a waste to remand for the same rulings to be put in place again.

### 1.     Summary judgment was procedurally appropriate.

MSP's argument that the District Court should not have entered summary judgment but instead should have entered dismissal without prejudice is wrong. A summary judgment dismissal is considered "a decision on the merits for res judicata purposes." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988 (9th Cir. 2005). Conversely, "a dismissal without prejudice is generally not considered an adjudication on the merits of a controversy and thus is not entitled to preclusive effect." *In re Duncan*, 713 F.2d 538, 544 (9th Cir. 1983).

Rule 56 requires that in response to a summary judgment motion, a plaintiff can no longer rest on "mere allegations, but must set forth by affidavit or other evidence specific facts" showing a "genuine dispute." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted); Fed. R. Civ. P. 56(c).

Here, as set forth above, based on its evidentiary review and conclusion that MSP Recovery failed to proffer sufficient admissible evidence to establish any of its claims on the merits (1-ER-25-29, 48-53), the District Court went on to state that MSP Recovery also lacked standing because "plaintiffs have failed to establish that their assignors suffered any injury-in-fact or have standing to sue under the MSP Act." *Id*. at 31, 54. "This is because, as discussed, plaintiffs have failed to adduce admissible evidence that the payments for which they seek reimbursement were made to compensate medical providers for the reasonable and necessary treatment of injuries sustained by Medicare beneficiaries in automobile accidents covered by one of defendants' insurance policies." *Id.*

MSP Recovery argues on appeal that because the District Court found it failed prove standing, the final disposition should have been a dismissal without prejudice. AOB 31-33. But, the District Court's finding of lack of standing does not erase the necessary, corollary merits decision that MSP Recovery failed after five years to prove the elements of its claims.

When jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the merits, it is "both proper and necessary for the trial court first to resolve the merits of the claim to determine its own jurisdiction." *Augustine v. United States,* 704 F.2d 1074, 1079 (9th Cir. 1983); *Ellis v. Walker Dev. Co.*, 884 F.2d 467, 469 (9th Cir. 1989) (affirming summary

judgment). Here, the District Court was required to review the evidence to determine its insufficiency, the result of which was the summary judgment ruling on the merits that concluded there was a lack of proof of injury. That review and conclusion was intertwined with the corollary ruling that MSP Recovery also failed to prove part of its Article III standing, making it "proper and necessary." *See also United States v. Hooper*, 229 F.3d 818, 820 n.4 (9th Cir. 2000) ("The district court's concluding statement that Claimants lacked 'standing' is simply another way of stating that Claimants had failed to establish on the merits a property interest entitling them to relief"); *United States v. $9,041,598.68*, 163 F.3d 238, 245 (5th Cir. 1998) (viewing the district court's "post-verdict discussion of standing as no more than a recognition of the fact that the jury verdict defeated all possible claims of [the claimant-appellant] on the merits"); *see also, e.g., AIX*, 2020 WL 5524854, at *11 (entering *summary judgment* against MSP Recovery based on finding that lack of proof on exemplar claims resulted in no standing to bring suit).

None of the cases cited by MSP Recovery support its proposition that the District Court's summary judgments should be converted to dismissals without prejudice. AOB 31-33. Each of MSP Recovery's cited cases involves requests for equitable relief and dismissals based on an inherent inability to establish standing because the relief requested would not remedy the alleged injury or the alleged

injury was too speculative—not summary judgments based on an ultimate lack of proof like here, where if MSP Recovery had admissible evidence to address the elements of its claims then the relief sought (damages) would remedy the alleged injuries.[30] Further, the cases MSP Recovery cites are vastly different procedurally, and none involved evidentiary review on summary judgment after five iterations of pleadings and full-blown discovery.

MSP Recovery's ultimate failure "at the put up or shut up moment of summary judgment" to proffer adequate proof does not equate to a threshold standing determination, and it should not be rewarded by converting procedurally proper summary judgments into dismissals without prejudice.

### 2. The statute of limitations ruling was permitted and helpful.

MSP Recovery's argument that the District Court should not have reached any decision on the statute of limitations is a distraction with no real impact. *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1291-93 (9th Cir. 2014) (reversing district court finding of lack of Article III standing and then proceeding to address "alternative holdings on a number of issues relevant to [plaintiff's] ability to bring suit," including statute of

---

[30] *See e.g., Scott v. Pasadena Unified School District*, 306 F.3d 646, 656, 659 (9th Cir. 2002) (plaintiffs lacked standing to challenge school district's possible future consideration of racial and gender factors in admission lottery because district discontinued lottery).

limitations); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135-36 (9th Cir. 2002) (reversing summary judgment premised on lack of Article III standing and addressing alternative holding that claim was barred by statute of limitations).

If this Court affirms the District Court's findings regarding failure of proof, on which all of the claims in both cases failed, then any ruling on whether the District Court was permitted to address the statute of limitations would have no impact on the final outcome of the cases; and in that event this Court would not even need to reach the procedural (or substantive) statute of limitations analysis.

Alternatively, if this Court were to disagree with the District Court on the failure of proof (which it should not), because the District Court already ruled on the application of the statute of limitations, this Court presently has the benefit of the District Court's determination and can affirm or reverse on the substance of the statute of limitations ruling.

However, if this Court were to assess the propriety of the District Court's procedure, it will either find it proper and continue on this same path or find it improper and have the option to remand to the District Court to put in place the same statute of limitations finding already issued. That last possible outcome, which MSP Recovery seeks, is not only wasteful but counter-productive because it risks a second appeal by MSP Recovery on this same issue.

As demonstrated herein, MSP's procedural attacks on the judgments are

without merit and should be rejected.

**E.      This Court can affirm the judgments on the additional grounds set forth in Farmers' summary judgment motions.**

The Court of Appeals may affirm the judgment on any ground supported by the record, whether or not the district court decision relied on the same grounds or reasoning adopted by the appellate court. *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.,* 159 F.3d 412, 418-19 (9th Cir. 1998).

The District Court did not reach all of Farmers' arguments on summary judgment. 1-ER-15-22,31,39-45,54. In addition to the arguments that MSP Recovery lacked evidence and the majority of claims were time-barred, Farmers raised a plethora of additional arguments that, in their totality, entitled Farmers to summary judgment on all claims, including without limitation that MSP Recovery lacked proof it was assigned the right to sue on the claims[31] and various statutory and policy based defenses precluded liability. 1-ER-15-22,31,39-45,54; SER-115,153. All of these additional arguments are supported in detail by the record. As such, should any claims remain after this Court rules on the issues raised by MSP

---

[31] For example, Farmers argued 64 claims in the No-Fault Case failed for no proof of compliance with a Florida statutory condition precedent to suit seeking payment of No-Fault policy benefits. 2-ER-234(Facts 95-95). Separately, 52 claims in the Fourth Amended Complaints were not even owned by the MSP Recovery named plaintiffs but rather by an independent entity called Series 44. 2-ER-188-192(Facts 22-28), 2-ER-263-267(Facts 22-28).

Recovery in these appeals, this Court should affirm the judgments based on these arguments.

## X.

## CONCLUSION

We end where we began. The District Court's findings are correct: (i) MSP Recovery's alleged claims failed "because plaintiffs have not put forth any evidence, let alone admissible evidence" supporting the claims, (ii) the majority of the claims were time-barred, and (iii) therefore Farmers was entitled to summary judgment. There is no support in the record or the law to give MSP Recovery a "do-over." The District Court's judgments should be affirmed in their entirety.

Dated:  February 3, 2023          **AKERMAN LLP**

By:     */s/ Valerie Greenberg*
        Valerie Greenberg

By:     */s/ Michael R. Weiss*
        Michael R. Weiss

        *Counsel for Defendants and Appellees*

65

# XI.

# STATUTORY ADDENDUM

68522435;1

Code of Federal Regulations
    Title 42. Public Health
        Chapter IV. Centers for Medicare & Medicaid Services, Department of Health and Human Services (Refs & Annos)
            Subchapter B. Medicare Program
                Part 411. Exclusions from Medicare and Limitations on Medicare Payment (Refs & Annos)
                    Subpart B. Insurance Coverage that Limits Medicare Payment: General Provisions

42 C.F.R. § 411.21

§ 411.21 Definitions.

Effective: April 25, 2006
Currentness

In this subpart B and in subparts C through H of this part, unless the context indicates otherwise—

Conditional payment means a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed.

Coverage or covered services, when used in connection with primary payments, means services for which a primary payer would pay if a proper claim were filed.

Monthly capitation payment means a comprehensive monthly payment that covers all physician services associated with the continuing medical management of a maintenance dialysis patient who dialyses at home or as an outpatient in an approved ESRD facility.

Plan means any arrangement, oral or written, by one or more entities, to provide health benefits or medical care or assume legal liability for injury or illness.

Primary payer means, when used in the context in which Medicare is the secondary payer, any entity that is or was required or responsible to make payment with respect to an item or service (or any portion thereof) under a primary plan. These entities include, but are not limited to, insurers or self-insurers, third party administrators, and all employers that sponsor or contribute to group health plans or large group health plans.

Primary payment means, when used in the context in which Medicare is the secondary payer, payment by a primary payer for services that are also covered under Medicare.

Primary plan means, when used in the context in which Medicare is the secondary payer, a group health plan or large group health plan, a workers' compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan), or no-fault insurance.

Prompt or promptly, when used in connection with primary payments, except as provided in § 411.50, for payments by liability insurers, means payment within 120 days after receipt of the claim.

Proper claim means a claim that is filed timely and meets all other claim filing requirements specified by the plan, program, or insurer.

Secondary, when used to characterize Medicare benefits, means that those benefits are payable only to the extent that payment has not been made and cannot reasonably be expected to be made under other coverage that is primary to Medicare.

Secondary payments means payments made for Medicare covered services or portions of services that are not payable under other coverage that is primary to Medicare.

**Credits**

[60 FR 45361, Aug. 31, 1995; 71 FR 9470, Feb. 24, 2006; 73 FR 9684, Feb. 22, 2008]

SOURCE: 54 FR 41734, Oct. 11, 1989; 55 FR 24568, June 18, 1990; 55 FR 31185, Aug. 1, 1990; 55 FR 53522, Dec. 31, 1990; 56 FR 61381, Dec. 3, 1991; 60 FR 41978, Aug. 14, 1995; 60 FR 45361, Aug. 31, 1995; 60 FR 50441, Sept. 29, 1995; 70 FR 4525, Jan. 28, 2005; 71 FR 45169, Aug. 8, 2006; 71 FR 69785, Dec. 1, 2006; 72 FR 18914, April 16, 2007; 73 FR 9684, Feb. 22, 2008; 77 FR 29028, May 16, 2012; 83 FR 39289, Aug. 8, 2018; 83 FR 60073, Nov. 23, 2018, unless otherwise noted.

AUTHORITY: 42 U.S.C. 1302, 1395w–101 through 1395w–152, 1395hh, and 1395nn.

Notes of Decisions (59)

Current through Jan. 30, 2023, 88 FR 5799. Some sections may be more current. See credits for details.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag - Severe Negative Treatment

Unconstitutional or Preempted  Recognized as Invalid   Ocean Harbor Casualty Insurance v. MSPA Claims, 1,   Fla.App. 3 Dist.,   Sep. 26, 2018

Code of Federal Regulations
  Title 42. Public Health
    Chapter IV. Centers for Medicare & Medicaid Services, Department of Health and Human Services (Refs & Annos)
    Subchapter B. Medicare Program
      Part 411. Exclusions from Medicare and Limitations on Medicare Payment (Refs & Annos)
        Subpart B. Insurance Coverage that Limits Medicare Payment: General Provisions

42 C.F.R. § 411.24

§ 411.24 Recovery of conditional payments.

Effective: July 16, 2012
Currentness

<For statute(s) affecting validity of par. (f), see: 42 USCA § 1395y(b)(2)(B)(ii).>

If a Medicare conditional payment is made, the following rules apply:

(a) Release of information. The filing of a Medicare claim by on or behalf of the beneficiary constitutes an express authorization for any entity, including State Medicaid and workers' compensation agencies, and data depositories, that possesses information pertinent to the Medicare claim to release that information to CMS. This information will be used only for Medicare claims processing and for coordination of benefits purposes.

(b) Right to initiate recovery. CMS may initiate recovery as soon as it learns that payment has been made or could be made under workers' compensation, any liability or no-fault insurance, or an employer group health plan.

(c) Amount of recovery.

(1) If it is not necessary for CMS to take legal action to recover, CMS recovers the lesser of the following:

(i) The amount of the Medicare primary payment.

(ii) The full primary payment amount that the primary payer is obligated to pay under this part without regard to any payment, other than a full primary payment that the primary payer has paid or will make, or, in the case of a primary payment beneficiary, the amount of the primary payment.

(2) If it is necessary for CMS to take legal action to recover from the primary payer, CMS may recover twice the amount specified in paragraph (c)(1)(i) of this section.

(d) Methods of recovery. CMS may recover by direct collection or by offset against any monies CMS owes the entity responsible for refunding the conditional payment.

(e) Recovery from primary payers. CMS has a direct right of action to recover from any primary payer.

(f) Claims filing requirements.

(1) CMS may recover without regard to any claims filing requirements that the insurance program or plan imposes on the beneficiary or other claimant such as a time limit for filing a claim or a time limit for notifying the plan or program about the need for or receipt of services.

(2) However, CMS will not recover its payment for particular services in the face of a claims filing requirement unless it has filed a claim for recovery by the end of the year following the year in which the Medicare intermediary or carrier that paid the claim has notice that the third party is a primary plan to Medicare for those particular services. (A notice received during the last three months of a year is considered received during the following year.)

(g) Recovery from parties that receive primary payments. CMS has a right of action to recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment.

(h) Reimbursement to Medicare. If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days.

(i) Special rules.

(1) In the case of liability insurance settlements and disputed claims under employer group health plans, workers' compensation insurance or plan, and no-fault insurance, the following rule applies: If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.

(2) The provisions of paragraph (i)(1) of this section also apply if a primary payer makes its payment to an entity other than Medicare when it is, or should be, aware that Medicare has made a conditional primary payment.

(3) In situations that involve procurement costs, the rule of § 411.37(b) applies.

(j) Recovery against Medicaid agency. If a primary payment is made to a State Medicaid agency and that agency does not reimburse Medicare, CMS may reduce any Federal funds due the Medicaid agency (under title XIX of the Act) by an amount equal to the Medicare payment or the primary payment, whichever is less.

(k) Recovery against Medicare contractor. If a Medicare contractor, including an intermediary or carrier, also insures, underwrites, or administers as a third party administrator, a program or plan that is primary to Medicare, and does not reimburse Medicare, CMS may offset the amount owed against any funds due the intermediary or carrier under title XVIII of the Act or due the contractor under the contract.

(l) Recovery when there is failure to file a proper claim—

(1) Basic rule. If Medicare makes a conditional payment with respect to services for which the beneficiary or provider or supplier has not filed a proper claim with a primary payer, and Medicare is unable to recover from the primary payer, Medicare may recover from the beneficiary or provider or supplier that was responsible for the failure to file a proper claim.

(2) Exceptions.

(i) This rule does not apply in the case of liability insurance nor when failure to file a proper claim is due to mental or physical incapacity of the beneficiary.

(ii) CMS will not recover from providers or suppliers that are in compliance with the requirements of § 489.20 of this chapter and can show that the reason they failed to file a proper claim is that the beneficiary, or someone acting on his or her behalf, failed to give, or gave erroneous, information regarding coverage that is primary to Medicare.

(m) Interest charges.

(1) With respect to recovery of payments for items and services furnished before October 31, 1994, CMS charges interest, exercising common law authority in accordance with 45 CFR 30.13, consistent with the Federal Claims Collection Act (31 U.S.C. 3711).

(2) In addition to its common law authority with respect to recovery of payments for items and services furnished on or after October 31, 1994, CMS charges interest in accordance with section 1862(b)(2)(B)(i) of the Act. Under that provision—

(i) CMS may charge interest if reimbursement is not made to the appropriate trust fund before the expiration of the 60–day period that begins on the date on which notice or other information is received by CMS that payment has been or could be made under a primary plan;

(ii) Interest may accrue from the date when that notice or other information is received by CMS, is charged until reimbursement is made, and is applied for full 30–day periods; and

(iii) The rate of interest is that provided at § 405.378(d) of this chapter.

**Credits**

[55 FR 1820, Jan. 19, 1990; 60 FR 45361, 45362, Aug. 31, 1995; 69 FR 45607, July 30, 2004; 71 FR 9470, Feb. 24, 2006; 73 FR 9684, Feb. 22, 2008]

SOURCE: 54 FR 41734, Oct. 11, 1989; 55 FR 24568, June 18, 1990; 55 FR 31185, Aug. 1, 1990; 55 FR 53522, Dec. 31, 1990; 56 FR 61381, Dec. 3, 1991; 60 FR 41978, Aug. 14, 1995; 60 FR 45361, Aug. 31, 1995; 60 FR 50441, Sept. 29, 1995; 70 FR 4525, Jan. 28, 2005; 71 FR 45169, Aug. 8, 2006; 71 FR 69785, Dec. 1, 2006; 72 FR 18914, April 16, 2007; 73 FR 9684, Feb. 22, 2008; 77 FR 29028, May 16, 2012; 83 FR 39289, Aug. 8, 2018; 83 FR 60073, Nov. 23, 2018, unless otherwise noted.

AUTHORITY: 42 U.S.C. 1302, 1395w−101 through 1395w−152, 1395hh, and 1395nn.

Notes of Decisions (48)

Current through Jan. 30, 2023, 88 FR 5799. Some sections may be more current. See credits for details.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
  Title 42. Public Health
    Chapter IV. Centers for Medicare & Medicaid Services, Department of Health and Human Services (Refs & Annos)
      Subchapter B. Medicare Program
        Part 411. Exclusions from Medicare and Limitations on Medicare Payment (Refs & Annos)
          Subpart B. Insurance Coverage that Limits Medicare Payment: General Provisions

42 C.F.R. § 411.25

§ 411.25 Primary payer's notice of primary payment responsibility.

Effective: March 24, 2008
Currentness

(a) If it is demonstrated to a primary payer that CMS has made a Medicare primary payment for services for which the primary payer has made or should have made primary payment, it must provide notice about primary payment responsibility and information about the underlying MSP situation to the entity or entities designated by CMS to receive and process that information.

(b) The notice must describe the specific situation and the circumstances (including the particular type of insurance coverage as specified in § 411.20(a)) and, if appropriate, the time period during which the insurer is primary to Medicare.

(c) The primary payer must provide additional information to the designated entity or entities as the designated entity or entities may require this information to update CMS' system of records.

**Credits**
[55 FR 1820, Jan. 19, 1990; 73 FR 9684, Feb. 22, 2008]

SOURCE: 54 FR 41734, Oct. 11, 1989; 55 FR 24568, June 18, 1990; 55 FR 31185, Aug. 1, 1990; 55 FR 53522, Dec. 31, 1990; 56 FR 61381, Dec. 3, 1991; 60 FR 41978, Aug. 14, 1995; 60 FR 45361, Aug. 31, 1995; 60 FR 50441, Sept. 29, 1995; 70 FR 4525, Jan. 28, 2005; 71 FR 45169, Aug. 8, 2006; 71 FR 69785, Dec. 1, 2006; 72 FR 18914, April 16, 2007; 73 FR 9684, Feb. 22, 2008; 77 FR 29028, May 16, 2012; 83 FR 39289, Aug. 8, 2018; 83 FR 60073, Nov. 23, 2018, unless otherwise noted.

AUTHORITY: 42 U.S.C. 1302, 1395w–101 through 1395w–152, 1395hh, and 1395nn.

Notes of Decisions (4)

Current through Jan. 30, 2023, 88 FR 5799. Some sections may be more current. See credits for details.

---

> Code of Federal Regulations
>> Title 42. Public Health
>>> Chapter IV. Centers for Medicare & Medicaid Services, Department of Health and Human Services (Refs & Annos)
>>>> Subchapter B. Medicare Program
>>>>> Part 411. Exclusions from Medicare and Limitations on Medicare Payment (Refs & Annos)
>>>>>> Subpart D. Limitations on Medicare Payment for Services Covered Under Liability or NO–Fault Insurance

42 C.F.R. § 411.51

§ 411.51 Beneficiary's responsibility with respect to no-fault insurance.

Currentness

(a) The beneficiary is responsible for taking whatever action is necessary to obtain any payment that can reasonably be expected under no-fault insurance.

(b) Except as specified in § 411.53, Medicare does not pay until the beneficiary has exhausted his or her remedies under no-fault insurance.

(c) Except as specified in § 411.53, Medicare does not pay for services that would have been covered by the no-fault insurance if the beneficiary had filed a proper claim.

(d) However, if a claim is denied for reasons other than not being a proper claim, Medicare pays for the services if they are covered under Medicare.

SOURCE: 54 FR 41734, Oct. 11, 1989; 55 FR 24568, June 18, 1990; 55 FR 31185, Aug. 1, 1990; 55 FR 53522, Dec. 31, 1990; 56 FR 61381, Dec. 3, 1991; 60 FR 41978, Aug. 14, 1995; 60 FR 45361, Aug. 31, 1995; 60 FR 50441, Sept. 29, 1995; 70 FR 4525, Jan. 28, 2005; 71 FR 45169, Aug. 8, 2006; 71 FR 69785, Dec. 1, 2006; 72 FR 18914, April 16, 2007; 73 FR 9684, Feb. 22, 2008; 77 FR 29028, May 16, 2012; 83 FR 39289, Aug. 8, 2018; 83 FR 60073, Nov. 23, 2018, unless otherwise noted.

AUTHORITY: 42 U.S.C. 1302, 1395w–101 through 1395w–152, 1395hh, and 1395nn.

Notes of Decisions (4)

Current through Jan. 30, 2023, 88 FR 5799. Some sections may be more current. See credits for details.

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
    Title 42. Public Health
        Chapter IV. Centers for Medicare & Medicaid Services, Department of Health and Human Services (Refs & Annos)
            Subchapter B. Medicare Program
                Part 422. Medicare Advantage Program (Refs & Annos)
                    Subpart C. Benefits and Beneficiary Protections (Refs & Annos)

42 C.F.R. § 422.108

§ 422.108 Medicare secondary payer (MSP) procedures.

Effective: June 7, 2010
Currentness

(a) Basic rule. CMS does not pay for services to the extent that Medicare is not the primary payer under section 1862(b) of the Act and part 411 of this chapter.

(b) Responsibilities of the MA organization. The MA organization must, for each MA plan—

   (1) Identify payers that are primary to Medicare under section 1862(b) of the Act and part 411 of this chapter;

   (2) Identify the amounts payable by those payers; and

   (3) Coordinate its benefits to Medicare enrollees with the benefits of the primary payers, including reporting, on an ongoing basis, information obtained related to requirements in paragraphs (b)(1) and (b)(2) of this section in accordance with CMS instructions.

(c) Collecting from other entities. The MA organization may bill, or authorize a provider to bill, other individuals or entities for covered Medicare services for which Medicare is not the primary payer, as specified in paragraphs (d) and (e) of this section.

(d) Collecting from other insurers or the enrollee. If a Medicare enrollee receives from an MA organization covered services that are also covered under State or Federal workers' compensation, any no-fault insurance, or any liability insurance policy or plan, including a self-insured plan, the MA organization may bill, or authorize a provider to bill any of the following—

   (1) The insurance carrier, the employer, or any other entity that is liable for payment for the services under section 1862(b) of the Act and part 411 of this chapter.

   (2) The Medicare enrollee, to the extent that he or she has been paid by the carrier, employer, or entity for covered medical expenses.

(e) *Collecting from group health plans (GHPs) and large group health plans (LGHPs).* An MA organization may bill a GHP or LGHP for services it furnishes to a Medicare enrollee who is also covered under the GHP or LGHP and may bill the Medicare enrollee to the extent that he or she has been paid by the GHP or LGHP.

(f) *MSP rules and State laws.* Consistent with § 422.402 concerning the Federal preemption of State law, the rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans. A State cannot take away an MA organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer. The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter.

**Credits**

[65 FR 40320, June 29, 2000; 70 FR 4721, Jan. 28, 2005; 75 FR 19805, April 15, 2010]

SOURCE: 63 FR 35067, 35077, June 26, 1998; 70 FR 4714, Jan. 28, 2005; 77 FR 29028, May 16, 2012; 84 FR 15827, April 16, 2019; 84 FR 23879, May 23, 2019, unless otherwise noted.

AUTHORITY: 42 U.S.C. 1302 and 1395hh.

Notes of Decisions (6)

Current through Jan. 30, 2023, 88 FR 5799. Some sections may be more current. See credits for details.

---

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# XII.

# CERTIFICATE OF COMPLIANCE

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** No. 22-55610 & 22-55613

I am the attorney or self-represented party.

**This brief contains** 13,937 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Michael R. Weiss*    **Date** February 3, 2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**    *Rev. 12/01/22*